**ORIGINAL**        BRODIE, J.

RECEIVED
SEP 3 0 2019
PRO SE OFFICE

JJIN THE UNITED STATES DISTRICT COURT, FOR THE EASTERN DISTRICT OF NEW YORK: AT 225 CADMAN PLAZA-East, BROOKLYN NEW YORK11201 **Main No.: (718) 613-2600**

# CV 19 - 5623

PETITIONER'S URGENT; NECESSARY, AND TIMELY APPLICATION FOR A

*"FEDERAL WRIT OF HABEAS CORPUS".* PURSUANT TO ARTICLE 1, SECT-

ION 9, CLAUSE 2 FOR THE CONSTITUTION OF THESE UNITED STATES OF

AMERICA; IN THE INTEREST OF JUSTICE; BY A STATE OF NEW YORK PRI-

SONER; A MOORISH-AMERICAN-NATIONAL; NATURAL PERSON; WHO

HAS BEEN ILLEGALLY DIVESTED OF THE *STATE OF NEW YORK'S RIGHT TO*

UTILIZE *STATE OF NEW YORK'S CONSTITUTIONAL AND STATUTORY*

*HABEAS CORPUS RIGHTS/PROVS.`123 OTHERWISE PROVIDED TO OTHER PERSONS*

*SIMILARLY SITUATED.* DENYING PETITIONER BASIC, AND FUNDAMENTAL

ACCESS TO COURT. BASED UPON [CONSPIRATATORIAL] CONFLICT OF IN-

TERST BY APPELLATE /STATE PUBLIC DEFENDER-SUPERVISOR KENDRA-HUTCH

INSON, AND "FIVE POINTS MAXIMUM SECURITY'S, PENITENTIARY

SUPERINTENDANT". BY AN AFRONT OF THE U.S. SUPREME COURT'S PROHIBITION

AND ADMONITION, BROACHED BY THE HONORABLE SAUNDRA DAY O'CONNOR

AT STRICKLAND V. WASHINTON, 466 U.S. 668 AT 685 (1984.)"BREACHING THE

THE ADVERSARIAL LINES OF THE SIXTH AMENDMENT. 28U.S.C. Section 2241©.

*God save the Constitution of The United States! And God save the Constitutions of the "Great State of New York"* ARTICLE 1 ( BILL OF RIGHTS ) Sections 4: Habeas Corpus; 6; As well as that of " The Great State of Maryland".

Civil No. _____ to be supplied by the Clerk of the Court

**A. PARTIES:**

Cush Ajelya Wright-EL, Petitioner       Reference, Aggregate Criminal No. below: 8166-2014

vs.                        The Honorable MATHEW A.SCIARRINO JUDGE, RESIDING

Defendant No 1. **Mr. THOMAS**: Warden/ Superintendent Five Points Correctional Facility;  In his individual and professional capacities; In care of his in house legal representative. 6600 State Route 96 Romulus, New York 14541 Phone: 1-607-869-5111;

[Type here]

1

Defendant No.2 Kendra L. Hutchinson Supervising Attorney, Appellate Advocates, 111 John Street-9th. Floor New York, New York 10038, phone: (212) 693-0085, in her Individual and Official capacities, in care of her in house legal representative;

Defendant No.3: The State of New York, in its' official capacity as a professional public corporation, fo the people of New York, by way of the Attorney General's Civil Office, in care of its in house legal representative, located at 28 Liberty Street 15th Floor, New York, New York 10005. (212)416-8300;

Defendant No. 4: The State of New York, in its' official capacity by way of The Governor: Honorable Andrew W. Cuomo, NEW YORK STATE Capitol Building Albany New York 12224, in his individual and official capacities. In care of his in house legal representative. See next:

Defendant No.5: The State of New York, in its official capacity of The Office and chambers of The Honorable Supreme Court Judge: **MATHEW A. SCIARRINO, JR.  e.o. nominae : IN ADDITION TO, RATHER THAN , THE GRTEAT STATE OF NEW YORK.**

B. **Affidavit:**  All facts of a material nature are advanced pursuant to the penalties for perjury codes of "The Great State of new York"; "Article **210 et seq. PENAL LAW; PRJURY; False Statement;  Swear Falsely".**  Next see: **from Google: 1:20 p.m. "OUR OFFICE", New York State https://ag.ny.gov";** Accord: Maryland Judicial Article Sections **9-101 PERJURY** GENERALLY; **9-102 [SUBORNATION OF PERJURY], with emphasis added;** and 9-103 [PERJURY BEFORE COURTS AND JURIES] with EXCEPTIONAL EMPHASIS–ADDED, of "THE GREAT STATE OF MARYLAND"; Cross indexed with Title 18 United States Code FEDERAL RULES OF CRIMINAL PROCEDURE Sections 1621; 1622, AND 1623. But not limited to Title 28 United States Code Section 1746, CIVIL PERJURY.  See also: Title 28 United States Code Federal Rules of Appellate Procedure Rule 46 (a) (1) (2) "THE APPLICANT MUST SUBSCRIBE TO THE FOLLOWING OATH OR AFFIRMATION:" I Kendra Hutchinson Appellate Advocates, SUPERVISOR, State of New York, do solemnly swear [or affirm] that I will conduct myself as an attorney and counselor of this court, UPRIGHTLY AND ACCORDING TO LAW; And that I will "SUPPORT AND DEFEND THE CONSTITUTION OF THE UNITED STATES".  See U.S. CHAMBER INSTITUE FOR LEGAL REFORM: OCTOBER 2007. "STATE ATTORNEY GENERAL CODE OF CONDUCT", Recommended Best Practices for initiating and Conducting Investigations and Litigation". From GOOGLE June 16th 2019.  Accord: Interstate Commerce Fraud and Codes Title 18 Sections 1341 and 1343 and 1349 FRAUD AND CONSPIRACY.  Referring to: Title 28 United States Code Section 528: "The Attorney General of the United States, SHALL BE REQUIRED, to promulgate Rules and Regulations which call for the disqualification of any officer or employee of the U.S. Department of Justice, TO INCLUDE A UNITED STATEDS ATTORNEY [OR ANY MEMBER OF HIS STAFF] from participating in A PERSONAL, POLITICAL, OR FINANCIAL [CONFLICT OF INTEREST].** And for any INTENTIONAL VIOLATION of any such provisions, **SHALL BE REMOVED FROM OFFICE".**

C.                                              *Preamble*

        **Where a State Court of "The Great State of New York" has become NO LONGER A COURT OF COMPETENT JURISDICTION, where such State Court has become" NO LONGER "PREVIOSULY ASCERTAINED BY LAW" –"where NEW YORK GOVERNMENT AGENTS, of the**

[Type here]

EXECUTIVE and JUDICIAL BRANCHES, have agreed to CONFEDERATE and CONSPIRE to obstruct justice, destroying appellants' right to TIMELY and APPROPRIATELY exercise and utilize "THE GREAT WRIT OF HABEAS CORPUS", within the "Great State" of New York? It is absolutely imperative that appellant must proceed  before the "UNITED STATES DISTRICT COURT AT THE EASTERN DISTRICT OF NEW YORK",  in order to realize ACCESS TO COURTS UNDER THE 1ST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES; IT'S JUDICIAL PROTECTORS and IT'S EXECUTIVE ENFORCERS. To also invoke, and utilize *"GUIDE TO JUDICIARY POLICY VOL.7-DEFENDER SERVICES"; Chapters [2] Appointment  and Payment of Counsel", and [3] "Authorization and Payment for Investigative, Expert, or Other Services"' In order to ACCOMMODATE FEDERAL CONSTITUTIONAL AND STATUTORY RIGHTS which have been categorically hijacked and crippled by State of New York RACIST INDIVIDUAL AGENTS, to OBSTRUCT JUSTICE and DEPRIVE APPELLANT OF HIS LIBERTY.*  GOD SAVE THE CONSTITUTION OF THE UNITED STATES OF AMERICA;  Making reference to the significant words of The Honorable Abraham Lincoln in the last paragraph of his "GETTYSBURG ADDRESS": *that this nation, under God, shall have a new birth of freedom and that government of the people, by the people, for the people, SHALL NOT PERISH FROM THE EARTH".*

Petitioner *Cush Ajelya Wright-El, is a Moorish-American-National, Naturalized Citizen of these United States. The son of two Moorish-American Citizens of the Ancient Moabite Blood, recognized by the United State, Secretary of State, as well as the Secretary of State for the "Great State of Maryland".* Resurrected *by Grand Sheik Richardson Dingle-El of Temple No. 13 North Howard Street Baltimore, Maryland 21201, 1974 A.D. during the Mayor Schaefer Administration.* As such, I Am; that I Am, that I Am, protected under ARTICLE VI, TO AND FOR THE CONSTITUTION OF THE UNITED STATES, into. "[1] All Debts contracted and Engagements entered into, before the Adoption of this Constitution shall be as valid AGAINST THE UNITED STATES under this Constitution, as under the Confederation. "[2]"This Constitution and the Laws of the United States which shall  be made in pursuance thereof; and all TREATIES MADE, OR WHICH SHALL BE MADE under the Authority of the United States, SHALL BE THE SUPREME LAW OF THE LAND; AND THE JUDGES IN   E V E R Y     S T A T E   S H A L L     BE BOUND THEREBY, any Thing in the Constitution of Laws of ANY STATE to the contrary NOTWITHSTANDING." [3] The Senators, and Representatives before mentioned and the members of the several State Legislatures, and ALL EXECUTIVE AND JUDICIAL OFFICERS, both of the United States and of THE SEVERAL STATES, SHALL BE BOUND BY    O A T H   OR    A F F I R M A T I O N, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States".

D.                                JURISDICTION

Jurisdiction is invoked upon this Honorable Court at Art. 1; Section 9; Clause 3 to the United States constitution "NO BILL OF ATTAINDER OR EX POST FACTO LAW SHALL BE PASSED" Where the "Great State of New York", has deemed null and void petitioner's right under State of New York Habeas Corpus laws, to otherwise, enjoy  access to New York Appellate Courts *though petitioner was in the process of direct appellate procedures;* Jurisdiction is hereby , and further invoked at Art. 1; Sect. 9; Clause 2" *The privilege of the Writ of Habeas Corpus shall not be suspended, UNLESS WHEN IN CASES OF REBELLION OR  I NVASION OF PUBLIC SAFETY may require it"* . See also Title 28 United States Code Section 2241© (3)" He is in custody in violation of the Constitution or Laws or treaties of the United

[Type here]                                                                 3.

State0s and (4) "He, being a citizen of a foreign state and domiciled therein IS IN CUSTODY. Accord: CRIMINAL JUSTICE ACT Title 18 United States Code Criminal Code and Rules Section 3006A **"ADEQUATE REPRESENTATION OF DEFENDANTS" (H) "Is entitled to appointment of counsel under the sixth amendment to the Constitution"; (I) "faces loss of liberty in a case, and FEDERAL LAW requires the appointment of counsel"; (J) Is entitled to the** appointment **of counsel under Section 4109 of this Title (B) IS SEEKING RELIEF UNDER SECTION 2241, 2254, or 2255 OF TITLE 28".** **See also Section 4108 "VERIFICATION OF CONSENT OF OFFENDER TO TRANSFER TO THE UNITED STATES".**

E.                                              **GROUNDS FOR RELIEF:**

1. On or about March 2019 An agent of the New York Attorney General i.e.: The Warden/Superintendent of the "FIVE POINTS CORRECTIONAL FACILITY", acted against petitioner's liberty, **OBSTRUCTING JUSTICE,** denying due process of Law in violation of the FIFTH AMENDMENT to Our U.S. Constitution, when acting to prevent petitioner's use of AMENDMENT 1's access to Courts provisional rights when the Warden hijacked petitioners' Original and 4-copies of his 10-pages:"**NOTICE BY APPELLANT TO SUPPLEMENT OPENING APPLICATION ON APPEAL. IND. NO. 2014-08166 (KINGS COUNTY)". Unquote. Attached as Exb. 1, E.D.N.Y.**

2. On or about April 11th Or 12th 2019, **An agent of The State of New York Judicial Courts and Appellate Advocacy, one SUPERVISOR KENDRA HUTCHINSON, made a false promise to her client/appellant Cush A. Wright-EL, WITNESSED BY: appellant; his mother Luecretia Dawn McNair-Bey; James Joseph Owens-EL, Wright's NOTED LEGAL ASSISTANT recognized by HUTCHINSON, and Sheik Luis Vizcarrondo Fargus-EL, ON A THREE –WAY TELEPHONE CALL, in violation of New York perjury laws, Penal Law Sec. 510.et.seq. and the U.S. Supreme Court's holding in STRICKLAND V. WASHINGTON, 466 U.S. 668 AT 685 (1984).Rendering known, premeditated ineffective assistance of counsel by conflict of interest.; Breaching the adversarial Line of the Sixth Amend. Annotated, of the U.S. Constitution.**

3. On or about May   2019  RESPONDENT Kendra Hutchinson, made a **TELEPHONIC ADMISSION** to appellant **Cush A. Wright-EL, and** appellant's mother Luecretia McNair-Bey; , during the course of a **SECOND THREE-WAY-TELEPHONE CALL,** that she **REPUDIATED** having PREVIOUSLY, ever made contact with the Warden/Superintendent of the Five Points Correctional  Facility Romulus, New York, on appellant's behalf, and **OTHERWISE,** having received word from said Warden/Superintendent that he would turn over to her, **THE ORIGINAL AND FOUR COPIES OF A TEN-PAGES "NOTICE BY APPELLANT TO SUPPLEMENT OPENING APPLICATION ON APPEAL",** which Hutchinson promised to forward to the Clerk of The Supreme Court of New York **AT NO COST UPON APPELLANT.** Constituting **SOME EVIDENCE     of     AN OVERT ACT IN FURTHERANCE     of a conspiracy WITH SAID WARDEN to obstruct justice in a concerted effort between he and Hutchinson to impede appellant's due diligent efforts to enjoy access to courts under Amendment one to the Constitution of the United States.**

4. **A**s a result of respondent Hutchinson's revealing admissions manifested in **GROUNDS 1,2, and 3 supra** Respondent Hutchinson is appearing to be guilty of **TELEPHONIC ORAL PERJURY** McNair-Bey; by James Joseph Owens-EL and Sheik Luis Vizcarrondo Fargus-El, for all times relevant to the dates described in April and May 2019.

[Type here]                                   4.

5. That The Honorable Judge of the Court **MATHEW A. SCIARRINO, JR. SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF KINGS PART 2,** as of Dec. 21, 2018, in A **DECISION/ORDER   Ind. No.:8166-2014** on page1, of such 4-pages DECISION/ORDER **prima facie exhibited RACIAL AND RELIGIOUS BIAS against appellant's mother and (PERCIPIENT WITNESS) LUECRETIA MCNAIR-BEY, during the course in his status as RESIDING JUDGE OVER THEESE APPELLATE HEARINGS on the issue of JUROR MISCONDUCT; did so PREJUDICE appellant's rights to an otherwise fair trial, in violation of Amendments1; 5, and 6 to the United States Constitution WHEN, His Honor Sciarrino became a COURT OF INCOMPITENT JURISDICTION, i.e : NO LONGER "(PREVIOUSLY ASCERTAINED B Y LAW)",** resulting in denial of motion to **vacate appellant's conviction , _inter alia_ allegations of juror misconduct . With Counsel of ROBERT REULAND, esq. . Counsel Rueland and the State's Case Agent Prosecutor Acquiescing, in Judge Sciarrino Jr.'s overt acts of racial and religious discrimination. According  Title 28 Federal Rules of Civil Procedure Sections 144"JUDICIAL BIAS, and 455(a).**

F.                             **FACTS IN SUPPORT OF GROUNDS-ALL INCLUSIVE**

1. Taken from page-1 of Judge Sciarrino Jr.'s 4-pages DECIION/ORDER of Dec. 21, 2018 , NOTICE OF ENTRY 1-2-19 of the "OFFICE OF THE DISTRICT ATTORNEY KINGS COUNTY APPEALS BUREAU, THE NECESSARY following excerpts at page one of said DECISION/ORDER is fully repeated and broached for the Court's and Public's viewing discretion, and in the Interest of justice for Cush A. Wright-EL: " On April 25, 2016, the defendant was convicted after jury trial of Attempted Murder in the Second Degree(PLSecs. 110/125.25[1], two counts of Assault in the First Degree(PL Sec. 120.10[1]).one count of Criminal Possession of a Weapon in the Second Degree (PL Secs. 265.03[3]and one  count of Reckless Endangerment in the First Degree (PL Secs.120.25). The defendant was sentenced to a total of twenty-five years plus five years of post-release supervision. The defendant sub sequently filed a notice of appeal , which has not been perfected. On July 7, 2018 he filed a motion ,**pro se** , to vacate his conviction based on , **_inter alia_,** allegations of juror misconduct. On October 12, 2018, this court denied the defendants' motion with the exception of granting a hearing as to juror misconduct . On November 5, 2018 , this court appointed Robert Reuland, Esq. as attorney for the defendant to assist in his 440 hearing and arguments, pursuant to section 18-b of the County Law. On December 10-11, 2018, this court conducted a hearing to explore the extent to which any juror misconduct occurred. At the conclusion of the hearing , the People and defense made oral arguments.   The People supplemented their argument with a written memorandum of law.  **Defense counsel RELIED ON THE RECORD."**  Unquote.

2. On March 25th. 2019, appellant and his family constructed a ten-pages **NOITICE BY APPELLANT TO SUPPLEMENT OPENING APPLICATION ON APPEAL IND. NO. 2014-08166 (KINGS COUNTY)** attached as Exb. 1 E. D. N.**Y. . Which his mother** and witness, Luecretia McNair-Bey  forwarded to  him via regular mail, U.S. Postal Service.

3. After about two weeks of appellants ' mother calling to appellant and the WARDEN/SUPERINTENDENT of the "Five Points Correctional Facility", inquiring into the status of the " **SUPPLEMENTAL BRIEF**", containing **THE ORIGINAL AND FOUR COPIES,** accompanied by a fifty dollar ($50) money order.  Enclosed with the briefs to allow appellant

to **PAY THE MAILING-DISTRIBUTION** of such copies to: The case agent Deputy States Attorney; Trial –Defense Counsel Robert Reuland; Public Defender **KENDRA HUTCHINSON,** and the Clerk of the Appeals Court for Brooklyn, New for Brooklyn New York.

4. Appellant and the Warden's personnel, verbally **denied to McNair-Bey and Owens-EL of ever receiving the BRIEFS or THE $50 MONEY ORDER.**

5. The telephonic notices received by Owens-El and McNair-Bey from the Warden and defendant Cush Wright –EL during the first two weeks of April 2019 declaring that the Supplemental Briefs and the money order had not arrived at the "Five Points Correctional Facility"? Sometime in that second week of April 2019, Cush Wright-EL called to McNair-Bey from Five Points Correctional Facility; Again, noting that he had not received either the briefs nor the money order.

6. McNair-Bey called to Public defender Kendra Hutchinson on a three-way telephone call, involving Cush Wright-EL; McNair-Bey and Owens-EL from McNair Bey's phone, as well as a fourth witness SHEIK LUIS VIZCARRONDO FARGUS-EL, from No. 443-975-8705, to Appellate Attorney for Wright-El, one KENDRA HUTCHINSON (212) 693-0085 of the New York Appellate Association, to let her know what exactly, the status of the appeal was. Moreover, to have her get involved with the initiative to get the **SUPPLEMENTAL BRIEFS IN THE SECURED CUSTODY OF THE CLERK FOR THE SUPRME COURT OF BROOKLYN NEW, YORK?**

7. Attorney Hutchinson picked up the telephone, and Cush Wright-EL introduced her to His Mother Luecretia Dawn McNair-Bey;, James Joseph Owens-EL, and Wright-EL granted Owens-EL permission to speak to Attorney Hutchinson as " **MR. OWENS-EL IS MY STEP FATHER"; he is assisting me with constructing and forwarding my SUPPLEMENTALAPPELLATE BRIEF', he has permission to talk to you. "UNQUOTE.**

8. McNair-Bey informed Hutchinson that she had contacted agents of the Warden at the Five Points Correctional Facility, and had inquired of them about the arrival, or the lack thereof, of **THE ORIGINAL AND FOUR COPIES OF THE SUPPLEMENTAL BRIEFS.**

9. That Five Points Staff informed Wright-EL's mother that they had **HAD NOT** RECEIVED THE BRIEFS. Wright-EL informed Hutchinson and all witnesses on the telephone line, that he too had not received the briefs.

10. McNair-Bey informed everyone on the call that she Owens-EL constructed the briefs, and that she, McNair-Bey enclosed them in a manila envelope, and mailed them via regular United States Postal Mail. From the _____Post Office

11. Hutchinson stated to Owens-El that even though the Appeals Court had not yet finalized the appeal, that Wright-EL has a few days or a couple of weeks, at most, before the Supreme Court finalizes the appeal.

12. Owens-EL clarified to Hutchinson,: **This appeal cannot be finalized as of the date of the completion and forwarding of the SUPPLEMENTAL BRIEFS because THE BRIEFS COMPLETED ON March 25th. 2019, and mailed shortly thereafter, SIGNIFICANTLY ADDRESSES The Honorable Mathew Sciarrino Jr.'s SUBJECTING WRIGHT-EL'S MOTHER to RACIAL and RELIGIOUS DISCRIMINATION/PROFILING, as a WITNESS FOR WRIGHT-EL, when the Court described her as, quote " : The defense presented the testimony of the defendant's mother: Luecretia D. McNair-Bey ("McNair-Bey"). At the hearing she wore a DASHIKI and a TURBAN."**

6.

13.    Owens-El articulated to Ms. Hutchinson that notwithstanding the fact that His Honor Judge Sciarrino Jr. **made an adverse decision against Wright-EL on Dec. 20ᵗʰ·, 2918? That His Honor's DECISION/ORDER is *[LEGALLY INCOMPITENT]* IN IT'S TOTALITY, because he PRIMA FACIE DEMONSTRATED , per that same Court Order *Racial and Religious Profiling, a/k/a Racial and Religious Discrimination.* Thus, His Honor's DECISION/ORDER, ( IN IT'S TOTALITY ) condemns itself by virtue of his own choice of words has become A COURT OF INCOMPITENT JURISDICTION, and therefore, is *NO LONGER PREVIOUSLY ASCERTAINED BY LAW  as otherwise established by the Sixth Amendment to the Constitution of the United States of America.***

14.    Appellate Public Defender Kendra Hutchinson **STOPPED IN THE MIDDLE OF HER REDENTION OF THE STATE OF NEW YORK'S  APPELLATE FINALITY RULE DEPICTION, only to AGREE**  with Owens-EL that His Honor Judge Sciarrinos' December 20ᵗʰ Decision/Order should not end the appellate process, nor any Supreme Court final decision because, His Honors' actions Decision/Order **IS THE FRUITS OF HIS VERY OWN POISONOUS-TREE, where [he] on his very own initiative, *PRIMA FACIE DEMONSTRATED JUDICIAL-BIAS,*  as proficated by Congress of the United States at 28 U.S.C. Section 144. Corresponding with the JUDICIAL MISCONDUCT DESCRIPTION at 28 U.S.C. Section 455. Owens-El referring to Federal Rule of Evidence Section 902 SELF AUTHENTICATION. That judge Sciarrino SELF CONDEMNED HIMSELF intrinsically .**

15. **Attorney Hutchinson**  AGREED WITH OWENS-EL, AS **SHEIK FARGUS-EL; MCNAIR-BEY, and WRIGHT-EL listened.** Hutchinson commenting to thee effect: MR. OWENS-EL, YOU HAVE BEEN AROUND SOME VERY EDUCATED PEOPLE, I AGREE WITH YOUR POINT **THAT JUDGE SCIARRINO WAS WRONG FOR RACIALLY AND RELIGIOUSLY PROFILING MR. WRIGHT-EL'S MOTHER MS. MCNAIR-BEY, DURING THE GYUMPFI HEARING, and for those reasons I AGREE THAT MR. WRIGHT-EL'S CASE CAN REMAIN OPEN, AND HE DOES HAS A HABEAS CORPUS REMEDY IN THE FEDERAL COURT, ONCE HE EXHAUSTS NEW YORK STATE REMEDIES.**

16. Owens-EL  mentioned the **1970'S CASE OF SOSTRE V. MCGINNIS, in the New York Judicial History,** stating that : **"the warden has hijacked  Wright-Els'  first amendment rights of access to courts".**

17. Ms. Hutchinson said : she will contact the Warden in an attempt to retrieve the Supplemental Briefs, and will send Owens-EL a copy of the Prison Mail Policy. Stating that : She knows that the Rule is :MR. WRIGHT-EL  CAN ONLY RECEIVE 5-PAGES at any time .

18. On April 12, 2019, Ms. Hutchinson forwarded a cover letter to **Owens-EL** enclosing a 13-pages document entitled :"NEW YORK STATE/CORRECTIONS AND COMMUNITY SUPERVISION/INMATE CORRESPONDENCE PROGRAM signed by :"**Jeff, MCKEY"** Attached .Exb. 3.

19. At page 8 of 13,para.3 '**ADVANCES FOR LEGAL MAIL POSTAGE",** "Funds may be advanced to an inmate for the purpose of **SENDING LEGAL MAIL** in accordance with the procedures detailed in Directive #**4421** . "Privileged Correspondence ", and Directive #2788 ," Collection & Repayment of Inmate Advances & Obligations".

20.  Petitioner, Cush Wright-EL did not make a request for **ADVANCES FOR LEGAL POSTAGE.**  His mother forwarded the **ORIGINAL and FOUR COPIES**  of the **10-pages SUPPLEMENTAL BRIEFS with a $50 Dollar U.S. Postal Money Order** via regular U.S. Postage Mail-Service

[Type here]

from the **MAIN POST OFFICE** building on East Fayette Street in Baltimore, Maryland in the last week of March 2019, or the first week of April 2019, and she was given a white in color receipt by a Black Postal Employee. Ms. McNair-Bey, my mother maintains that she has her copy of the receipt at her home in Maryland. Currently , as of September 12th 2019, she is out of state.

21. The document sent by Ms. **KENDRA HUTCHINSON** further educates at page 9 of 13 F: "Collected mail **SHALL BE PROCESSED** and **forwarded to a post office ATLEAST ONCE A DAY";** See same page Sect. G: Before opening, incoming mail should be checked to MAKE SURE that the addressee can be accurately identified and **IS CURRENTLY AT THE FACILITY.** Cush Wright-EL was at the Five Points Facility in March and April 2019, and has remained there consistently up to this date 9-12-2019.

22. The Warden/Superintendent never forwarded the **SUPPLEMENTAL BRIEFS nor THE $50 U.S. POSTAL MONEY ORDER enclosed in the envelope addressed to** : Mr. Cush Wright-EL No. 16A2113, 6600State Street Rt.96, Box 119 Romulus, N.Y. 14541.

23. Next, please see para.G(b)" All incoming general correspondence will be opened and **INSPECTED FOR CASH, CHECKS, MONEY ORDERS.** <u>**"The inmate's presence is not required during the inspection of incoming general correspondence. (See directive 4421."**</u>

24. Cush Wright-EL was all ways **IN HIS CELL     at mail call,** on the days that his mother forwarded the U.S. MAIL from Baltimore in March 2019, as well as in the month of April 2019 once the Public Defender got involved? Cush Wright-EL **WAS IN HIS CELLl.** Neither the Warden , nor his agents ever **APPROACHED** Cush Wright-EL in person, or in writing concerning the **$50 MONEY ORDER or THE SUPPLEMENTAL BRIEFS.**

25. The mother still today, **HAS NOT RECEIVED THE BRIEFS OR MONEY ORDER , RETURNED IN THE MAIL EITHER FROM THE U.S. POST OFFICE, OR FROM THE WARDEN'S MAIL ROOM.**

26. Next, on April 2019, Public Defender Kendra Hutchinson was contacted by Appellant's Mother Luecretia McNair-Bey on her telephone No. 443-975-8705 , with James Joseph Owens-El on the call with McNair-Bey, and Cush Wright-EL on the three-way. McNair-Bey and Cush Wright-EL communicating to Hutchinson that **she needed to contact the Warden and inquire into the status of the missing SUPPLEMENTAL BRIEFS and THE $50 U.S. POSTAL MONEY ORDE?**

27. Ms. Hutchinson promised to look into the matter of the missing documents by contacting the Warden during the course of the discussion in para. 26..

28. Later still in April 2019, in a telephone conference with McNair-Bey and Owens-EL, Public Defender Hutchinson volunteered that **IN FACT CONTACTED THE WARDEN; THAT THE WARDEN STATED HE "HAS THE SUPPLEMENTAL BRIEFS"; THAT HE WILL BE FORWARDING THE BRIEFS TO HER; THAT SHE WILL BE DISTRIBUTING THE BRIEFS TO THE CLERK, AND OTHER PARTIES, AT NO EXPENCE TO MR. WRIGHT-EL.** During that discussion, she did not mention the $50 money order.

29. At page 10 of 13 of the **No 4422, Inmate Correspondence Program para.3 NOTE.** The Warden and the Governor of "The Great State of New York" is quoted(for plenary purposes) " <u>**A limit of FIVE PAGES of printed or photocopied materials ( an individual newspaper clipping will be considered one page0 MAY BE RECEIVED  WITHIN A PIECE OF REGULAR CORRESPONDENCE (except as provided below). "**</u>            **Not to exceed once every four months, an inmate may make a written request to the Superintendent to RECEIVE IN**



**EXCESS OF FIVE PAGES OF PRINTED OR PHOTOCOPIED   LEGAL PAPERS   SPECIFICALLY RELATED TO THYE INMATE'S       CURRENT       LEGAL      MATTER 9E.G., LEGAL BRIEF or TRIAL TRANSCRIPTS RELATING TO THE INMATE'S   A C T I V E      CASE, WITHIN  A PIECE OF REGULAR CORRESPONDENCE.**

30. Cush Wright-EL  was never able to benefit from the procedural right to utilize any of the State's rules within the confines of program No.s 4421 or 4422 as well as Amendment 1 to the Constitution of the United states Of America. Because the Warden/Superintendent took custody of the mail containing the briefs and money order; and never returned the briefs and money order to Ms. McNair-BEY. More essentially, the Warden omitted actions described at the bottom of para.3 Ibid.: "**The five page limit printed or photocopied materials shall not apply to INCOMING MAIL from any of the entities listed in Sect. 721.2(b) (2) through (6)of  Directive # 4421."*Privileged Correspondence ," or to incoming mail from A PROCESS SERVER OR      OTHER ENTITY   THAT IS       SEEKING TO SERVE     A LEGAL NOTICE      UPON THE INMATE.***

31. **Luecretia McNair-Bey is Appellant's NEXT FRIEND and server of the SUPPLEMENTAL BRIEFS, where attorney Robert Reuland Court Appointed, wholely abandoned the issues of  JUDICAL RACIAL AND RELIGEOUS PROFILING of Witness, and mother Luecretia Dawn McNair-Bey exacted upon appellant by Judge The Honorable Matthew A. Sciarrino Jr.**

32. Sometime in late April or early May 2019 Cush Wright-EL informed McNair-Bey and Owens-EL via prison telephone lines, that **WRIGHT-EL SPOKE WITH MS. KENDRA HUTCHINSON** about the status of the **PROMISED FORWARDED SUPPLEMENTAL BRIEFS?, from the May telephone phone conference;** that she took the hostile, and diametrically opposed position that **SHE :QUOTE  "NEVER TALKED TO THE WARDEN ABOUT THE BRIEFS! AND THAT SHE N E V E R    P R O M I S E D   TO FORWARD THE BRIEFS" UNQUOTE.**

33. As of this date: September 12th 2019, the Warden has yet to deliver the Briefs or the $50 money order to Cush Wright-EL, nor has he sent the mail back to the sender/server Luecretia Dawn McNair-Bey. The mother of appellant Cush Wright-EL.

34. The appellant highlights a note to the attention of the judges of the Eastern District of New York: Which is that the telephone calls shared with Cush Wright-EL by everyone , KENDRA HUTCHINSON **ARE MONITORED AND RECORDED.**  Thus, all the Courts and the United States Attorneys as well as  the New York States Attorney General has to do to discover the truth about the **admissions and promises** by Ms. Hutchinson,? Is to produce the telephone tape recordings with Cush Wright-EL ; Hutchison; McNair-Bey and Owens-El enclosed within the time frames of March 15th 2019 through September 13th 2019, in order to discover the **TRUTH ABOUT THE CONFLICT OF INTEREST/CONSPIRATOL/INEFFECTIVE ASSISTANCE ROLLS that that lady subjected her client to.?**

35. From all that appellant has  learned through conversations and observing television? There is a way of **RESSURECTING both AUDIO AND VISUAL RECORDINGS TODAY.** It is known as :"**internet protocol".**  It was highlighted by the Criminal Investigator in the **PENN STATE MIKE PIAZZA MURDER,** by the due diligent hand of one named Mr. **SCHITZADIA.**  Who was able to call upon the astronomical skills and expertise of the (F.B.I.) Federal Bureau of Investigation. Such advertisement was featured on CBS, as well NBC Morning News Programs. The States Attorneys Office of **BELEFONTE COUNTY, PENNSYLVANIA,** Ms. Sherill

[Type here]                                        9.

Miller, or Sherill Harley? Also stated to **GAIL KING cbs,** THAT THE FBI HAS THE MEANS TO **RETRIVE BOTH   E R A S E D   visual and audio recordings.**

36. In the timely manner prescribed by law, submitted commensurate with this complaint, Petitioner/Appellant Cush Wright-El pleas before the integrity of the Federal Court , under any discovery provisions? To search and discover the Mail containing the Original and four copies of the **SUPPLEMENTAL BRIEFS; THE $50 MONEY ORDER , AND THE VERBAL PROMISES MADE BY KENTRA HUTCHISON THAT SHE SPOKE WITH THE WARDEN; HE ADMITTED TO TAKING POSSESSION OF THE BRIEFS; THAT HE WOULD BE SENDING THEM TO HER, AND THAT SHE WOULD BE FORWARDING THEM TO THE COURT AND OTHER PARTIES, ON BEHALF OF CUSH WRIGHT-EL, AT NO EXPENCE FROM HIM?**

37. Petitioner/Defendant/Appellant ,with the further help of his server McNair-Bey  and Owens-EL on June 17th 2019 forwarded  a 5-pages joint affidavit signed by McNair-Bey and Owens-EL addressed to the **ATTORNEY GENERAL** of the "Great State of New York, Notarized by **WELLS FARGO BANK** at 8 Light Street Baltimore ,Md. 21202 via **certified mail return receipt requested. The receipt IS IN POSSESSION OF MCNAIR-BEY, and the number is reporter to MS. ALEXANDER OF THE ATTORNEY GENERAL'S OFFICE.** Ms. **Alexander** stated to McNair-Bey: "I DON'T WANT TO TALK TO MR. OWENS-EL, I'LL TALK TO YOU. ,and ordered Owens-El from off of the telephone because **OWENS-EL ASKED HER FOR HER NAME/ HER STATUS, AND HER IMMEDIATE SUPERVISORS' NAME?**

38. MCNAIR-Bey and Alexander got **CHE WILLIAMS-EL  on the telephone** and the three found the **CERTIFIED MAIL FORM 3811.** Ms. Alexander THEN and ONLY THEN **ADMITTED** that their office received the joint signed affidavit from McNair-Bey and Owens-EL for Cush Wright-EL.

### RELIEF SOUGHT

1. Declare, that The Honorable Mathew A. Sciarrino, prima facie, by deliberate indifference to his **OATH OF OFFICE** to support and defend the Constitution of the United States against all enemies foreign and domestic, violated  Amendment six (6) when becoming a **COURT OF INCOMPETENT JURISDICTION;** was no longer **PREVIOUSLY ASCERTAINED BY LAW;** when he Racially and Religiously Profiled Appellants Mother i.e. Percipient Witness **McNair-Bey, Luecretia Dawn** in violation of  Amendment 1 to the U.S. Constitution. When he **UNDER OATH condemned her for coming in his Court Room with " A DISHIKI AND A TURBAN ON ".**

2. Declare that Judge Sciarrino's  actions at the **JUROR MISCONDUCT hearing** also resulted in prejudice to the defendant/appellant's rights to a fair trial when the Court ruled against appellant and his mother based on the Courts Biasness and Judicial Misconduct, due to the fact

that appellants' mother came in the Court wearing her choice of ethnic and religious clothing gear. I.E.: A Dashiki and a Turban. Conflicting WITH the Mother and Appellants Maryland Declaration of Rights  Constitutional provisions at Article 36**RELIGIOUS FREEDOM, and 39 MANNER OF ADMINISTERING OATH OR AFFIRMATION.**

3.   Declare that petitioner; defendant, appellant timely and legally, by due diligence exhausted his State of New York Liberty Interest Remedies before proceeding before this Honorable Court, **WHEN** the Warden **hijacked the ORIGINAL AND FOUR COPIES OF THE 10-PAGES SUPPLEMENTAL BRIEFS,** Which were created and forwarded via U.S. Mail from Owens-El and McNair-Bey on or about March 28th 2019 **prior to the JUDICIAL FINALITY DECISION in the New York Brooklyn Supreme Court , AS WITNESSED AND NOTED TO APPELLANT; HIS MOTHER; Owens-EL, and Luis Fargus-EL;**

4.    Declare that The Attorney General of the "Great State of New York", in June 2019 **by his agent Alexander ADMITTED TO RECEPTION OF THE JOINTLY SIGNED AFFIDAVIT BY TWO MOORS: Owens-EL and McNair-Bey which outlined  the allegations AGAINST THE HONORABLE MATHEW A. SCIARRINO JR. JUDGE; THE OVERT ACTS OF THE WARDEN AND HIS AGENTS OF THE FIVE POINTS CORRECTIONAL FACILITY, AND THE    A D M I T T E D CONSPIRACY BY PUBLIC SUPERVISOR OF THE NEW YORK PUBLIC DEFENDER APPELLATE DIVISION.**

5.   **Issue the "Great Writ of Habeas Corpus", dismissing all charges and convictions previously established against Petitioner/Defendant/Appellant, WITH PREJUDICE. For cause of Judicial Misconduct; Judicial Bias; Conspiracy to perpetrate a Fraud on the Court by Appellate Counsel of Public Defender; with The Warden of the Five Points Correctional Facility; With deliberate indifference to the violations of Cush Wright-EL's first; fourth; fifth; sixth; eight; ninth; tenth and  fourteenth amendment rights to the Constitution of and to the United States.**

6.   Consider Wright-EL's  previously raised issue  in 2016 before the trial Court, where and which **THE COURT; THE TWO DETECTIVES; THE CASE AGENT STATES ATTORNEY, and the FEMALE SHERIFF     A D M I T T E D    that NO ONE PERFORMED THE PARAFIN TESTS on Wright-EI  for at least 33-days, when that same Court ADMITTED in the presence of JAMES JOSEPH OWENS-EL.**

7.   Appoint  Wright-EL professional Legal counsel  to represent him to fruition with his case delivered into the **UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK? To include attorneys for the MOORISH CONSULATE? Who's addresses and Telephone Numbers are known by Wright-EI's mother McNair-Bey.**

[Type here]

Respectfully submitted this 13th day of September, FRIDAY, 2019 by

_____

Cc Cush Wright-EL; Luecretia Dawn McNair-Bey; Moorish Consulate; The States Attorneys' office of the "Great State of New York"; Warden of Five Points Correctional Facility; The Governor of New York; Kendra Hutchinson Supervisory Public Defender State of New York; Robert Rueland attorney at law, and the Deputy District Attorney Case Agent for the Juror Misconduct Hearings.

c/s _____

Cush Wright-EL

/_____

Foot note: Luecretia McNair-Bey signs in place OF HER SON and his **NEXT FRIEND** where the Warden by conflict of interest policy deprives him of the Constitutional Right to receive this document in toto and then to forward to your Clerk.

Signature of McNair –Bey_____

-------------

[Type here]

Sept. 20, 2019
Mr.Cush Wright-EL
Five Points Cor. facility
State Route 96, P.O. box 119
Romulus, New York 14541

### Affadavit

The foregoing is true and accurate to the best of my knowledge. On Sept 20 2019, I Mr. Cush Wright-EL at about or around 3:00ᵖᵐ to 4:00ᵖᵐ directly after the count was cleared I recieved a letter. On the face of the envelop, in the top left hand Corner was the address of the five point's section facility yet what appeared to be black magic marker was scribbled over the facilitie's address, however it was still very much visible. In the right hand corner was the word "No Cardboard Mailers" written in blue ink in what appears as "bubble style incursive handwriting." The same handwriting appeared again in the center which Simply said: "Wrightel 16A2113" (The Numbers were under the Name.) to the left of the Name (Wrightel) written in black magic Marker diagonally is 10-C2-47B. After I noticed it had No return address or information, I openned it to find a Single Sheet of paper (A legal document). I then called my family to investigate whom this legal document had came from. After speaking with my Step-father, James Joesph Owens-EL he informed me that he and my brother in Lenwood Williams sent me this document certified mail on September 14ᵗʰ 2019, and that I Should have recieved a green reciept card, in which I did not. Lastly attached with this Affadavit, is the envelop in question, which I mistaken ly wrote My Stepfathers Address and Number on the back, along with the number 1 and 2. This Statement is truthful and accurate

Truly,
Mr. [signature]

Affidiant
[signature]





or call 1-800-410-7420.

YOUR OPINION COUNTS

9-27-2019  a. m.

ADDENDUM to PETITION FOR WRIT
OF HABEAS CORPUS by CUSH WRIGHT
Fore THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

Extra Ground,

As yet another OVERT ACT IN FURTHERAN-
CE, of the CONSPIRACY to OBSTRUCT
JUSTICE, attempting to DELAY ACCESS TO A
UNITED STATES DISTRICT COURT, as RETALIA-
TORY ANIMOSITY by Warden of FIVE
FIVE POINTS CORRECTIONAL FACILITY. In
violation of Amendment I to the U.S. Constitu-
tion and TITLE 18 United States Code Sections
1703 Delay or destruction of mail or newspapers; 1708 theft
Or receipt of stolen mail matter generally; to
Sections 1503; 1505; 1506; 1509; 1511; 1512; 1513; 1514.

Facts In Support

1. See attached Hand written Affidavit of Cush
A. Wright-EL dated and signed Sept. 20, 2019.

**IN THE SUPREME COURT OF THE "GREAT STATE OF NEW YORK"

APPELLATE DIVISION: SECOND DEPARTMENT

Cush Wright- El, Appellant,

-against-

THE PEOPLE OF THE STATE OF NEW YORK, Respondent

NOTICE BY APPELLANT TO SUPPLEMENT OPENING APPLICATION ON APPEAL. IND. NO. 2014-08166 (KINGS COUNTY)

A. Affidavit;  All facts of a material nature, are advanced pursuant to the penalties for perjury codes of "THE GREAT  STATE OF NEW YORK" and those of the United States of America: Title 18 United States Code  Section  1621, 1622 and 1623 (criminal perjury). But not limited to Title 28 U.S.C. Section 1746 Civil Perjury.

B.                              INTRODUCTION

This is appellant's  **SUPPLEMENTAL  OPENNING  BRIEF  IN ORDER TO    [CHALLENGE] THE HONORABLE   Mathew A. Sciarrino, Jr., JUDGE'  (DECISION/ORDER of 1-2-19  (FOR CAUSE)); FOR  PLENARY PURPOSES;  SEEKING REVERSAL OF SUCH DECISION-ORDER WITH EXTREME PREJUDICE;  ON THE MERITS; FOR HIS HONOR'S MANIFEST ABUSE OF DISCRETION;  i.e. PLAIN ERROR; HIS BREACHING THE SEPERATION OF POWERS  DOCTRINE, WHEN ACTING ON BEHALF OF THE STATE IN HIS JUDICIAL CAPACITY; CONSPIRING WITH THE STATE'S ATTORNEY AND PRIVATE COUNSEL "Robert Reuland,  IN ORDER TO UNCONSTITUTIONALLY [SHIFT THE BURDEN] FROM JUROR: MAC GYAMFI", UPON APPELLANT'S  MOTHER, TO DEMONSTRATE LOYALTIES OWED TO THE COURT BY MAC GYAMFI, TO  OTHERWISE [TIMELY, AND TRUTHFULLY  REPORT TO HIS HONORS'  COURT ABOUT CONTEMPTUOUS  MISCONDUCT _the Court Admitted_  TO THE RECORD, THAT NO ONE BUT MAC GYAMFI, COMMITTED].
MOST OUTSTANDINGLY: HIS HONOR  BROACHED  UPON PAGE 1, INCORPORATED IN  WHAT HE DESCRIBED  to the public as    R A C I A L    and    R E L I G E O U S discrimination    IN HIS    _delusionary_    _"FINDING OF FACT", against defendant's mother,_ _RESULTING IN   an adverse DECISION/ORDER depriving appellant of his liberty._  WHILE NOT HAVING  SUBJECT  MATTER, NOR  PERSONAL  JURISDICTION to    T R Y Ms. McNair Bey's R A C E    or    R E L I G E O N under any New York State, or Federal Criminal Statutes. ALL  IN VIOLATION  OF HER RIGHTS UNDER: AMENDMENTS  1, 5 AND 6  TO THE CONSTITUTION OF THESE  UNITED STATES, IN A  GREAT STATE OF NEW YORK, COURT ROOM.**

### C.                                      COUNTERMANDING FACTS OF APPELLANT

1. Definition **countermand: 2. "to recall or order back by a SUPERSEDING CONTRARY ORDER"**. Merriam-Webster, by Google March 16th Saturday 2019, tone at the time, was at 2:54 p.m..
2. Anti, at page (1.) of the **DECISION/ORDER** His Honor Sciarrino corroborates the fact that "The defendant subsequently filed A NOTICE OF APPEAL, **which has NOT BEEN PERFECTED'.**
3. Further, the court corroborated that "On July 7th 2018 he filed a motion, *pro se,* to vacate his conviction based on, *inter alia,* allegations of juror misconduct".
4. "On October 12th 2018, this court denied the defendant's motion with the exception of granting a hearing as to juror misconduct".
5. On November 5th 2018, this court **appointed Robert Reuland, Esq.** as attorney for the defendant to assist in his 440 hearing and arguments, pursuant to section 18-b of the County Law".
6. "On December 10 and 11, 2018, this court conducted a hearing to explore the **EXTENT to which ANY JUROR MISCONDUCT OCCURRED".**
7. "At the conclusion of the hearing, the People and defense made oral arguments. The people supplemented their argument with a written memorandum of Law".
8. "Defense counsel relied on the record".

### DELUSIONARY FINDINGS OF FACT

9. "defendant's mother: **Luecretia D. McNair-Bey (Ms. McNair-Bey)".**
   "At the hearing <u>she wore a DASHIKI and a TURBAN".</u>
10. "She testified that the defendant was her son".
    "Ms. McNair-Bey attended almost every day of the trial and was not present when the defendant was convicted and sentences".
11. "On April 19[th] 2016, after the trial recessed for the day, one of the jurors, Mac Gyamfi ("Mr. Gyamfi"), boarded the elevator with her".
12. "She stated that she introduced herself to Mr. Gyamfi as the defendant's mother".
    He introduced himself as Mr. Mac Williams".
13. "She asked if he was on the jury".
14. "They continued their conversation as they headed towards the subway".
15. "During the course of the conversation, Ms. McNair-Bey revealed that she was from Maryland and looking for a place to stay".
16. **"She stated that MR. GYUMFI OFFERED FOR HER TO S T A Y   W I T H   H I M,   which she declined".**
17. **"Before they parted ways, MR. GYUMFI PROVIDED HER WITH HIS   PHONE   NUMBER".**
18. "She stated that (LATER) on April 19th She   C A L L E D   H I M, and that Mr. Gyamfi" **tried to make arrangements for them to get something to eat together, however, the two never met".**

19. "She stated that she tried to speak to him via the IMO app., however Mr. Mac Gyamfi **"RESPONDED IN A SHORT MATTER" and** **"[it] was like he didn't want to talk"**.

20. "With regard to this case, Ms. McNair-Bey stated that the extent of Mr. Mac Gyamfi's commentary was that "**THE FACTS WOULD SPEAK FOR THEMSELVES [sic]**".

21. "She stated that she made no attempts to influence Mr. Mac Gyamfi's decision on the verdict".

22. "However, she stated that she felt it was **IMPLIED BY MR. Mac GYAMFI** that he **WOULD HELP HER SON if she STAYED OVER NIGHT AT HIS PLACE**".

23. "***HER PHONE RECORDS INDICATE THAT ON APRIL 19 AND APRIL 21 HER PHONE CALLED 929-264-6560, those calls were one minute and two minutes respectively***".

24. "The People presented the testimony of Mr. Gyamfi".

25. "He testified that **HE WAS A JUROR IN THE DEFENDANT'S TRIAL***.

26. "He "**[ADMITTED]**" to meeting a woman dressed in **TRADITIONAL AFRICAN CLOTHING** after the first day of trial".

27. "He stated that they had a conversation wherein **HE OFFERED ASSISTANCE FINDING A CHEAPER PLACE FOR THE WOMAN TO STAY AND THAT THEY E X C H A N G E D NUMBERS**".

28. "He **DENIED** that Ms. McNair-Bey told him that she was the defendant's mother".

29. "He stated that [THE NEXT DAY] he saw that her (sic) in court **AND ASKED  O N E  O F  THE COURT OFFICERS  W H O  S H E  W A S**".

30. "**IT WAS  T H E N     THAT     HE WAS TOLD  THAT SHE WAS THE DEFENDANT'S MOTHER**".

31. "**HE    A D M I T T E D  THAT         HE DID NOT SAY ANYTHING TO THE   J U D G E OR    COURT    STAFF,            BECAUSE    HE HAD NOT TALKED ABOUT THE CASE WITH HER**".

32. "**HE STATED THAT HE KEPT IT TO HIMSELF,        STAYED AWAY FROM HER    AND HAD NO FURTHER CONVERSATIONS  WITH HER**".

33. "He stated that he **NEVER CALLED HER     AND    SHE     NEVER CALLED HIM    VIA PHONE,      OR APP."**.

34. "He  stated that his interaction with Ms. McNair-Bey  did not  impact his vote on the verdict". "**HE DID STATE THAT     HIS PHONE NUMBER WAS        929-264-6560**".

C.                                        ARGUMENTS

   (1.)    The Honorable Judge of the Court: Mathew  Sciarrino, designated himself as a

          Court of Incompetent Jurisdiction, when [no longer previously ascertained by law]

          When he demonstrated [manifest racial and religious discrimination] against the

          Defendant's mother, in the course of an official, Judicial hearing. Then made

**An adverse decision against the defendant Cush Wright-EL. While having not**

**legally charged, indicted, of tried  defendants mother.  In violation of Amendments**

**Not limited to the EQAUL PROTECTION COMPONENTS of such same, and other**

**Amendments there from.  It's also an EX POST FACTO VIOLATION against the mother.**

It is admitted, thus not otherwise contested, that the Honorable  **Judge Sciarrino** (WROTE) in his Decision/Order of  1-2-19  in his "**FINDING OF FACT**": "The defense presented  the testimony of

**The defendant's mother: LUECRETIA D. MCNAIR-BEY, ("Ms. McNair-Bey ").     "At the hearing she wore a dashiki and a turban".        "She TESTIFIED that the defendant WAS HER SON".**

   The First Amendment of the Bill of Rights, of the Constitution of these United States of America dictates": **Congress shall make no laws respecting an establishment of religion, or the   FREE EXERCISE**

**THEREOF; nor abridge the FREEDOM OF SPEECH; or that of the Press; or the   R I G H T   O F   THE  P E O P L E      P E A C E A B L Y     T O     A S S E M B L E, and to  _petition the Government for redress of grievances"._**

      Noted /Affirmed  "Ms. McNair-Bey the mother of the defendant  Cush Wright–El, is indeed an **Heir apparent and the _owners _of this land via the NOBLE Prophet Timothy Drew Ali; Prophet and Founder of The Moorish Science Temple of America.  Account numbers 10105905 predicated by the (IRS) Internal Revenue  Service  of these United States.**

            "Ms. McNair-Bey",  had, as of 1-2-19; and has, and shall have, in time,  immemorial, as of the date of filing of this **SUPPLEMENTAL  APPEAL,** her  **natural birth right of her MOORISH ANCESTERS,** to carry, realize and recognize, **her MOORISH-AMERICAN; ROYAL ANCIENT MOABITE BLOOD.**  More apparently, she has the right and protection instituted by the **_establishing forefathers _** who consisted of **35 Moors (The HIGH CONTRACTING PARTY) and 20 Europeans (observers),** who  wrote and signed off as **ORIGINAL CONSTRUCTORS of said DECLARATION ON INDEPENDENCE, ARTICLES OF ASSOCIATION, ARTICLES OF CONFEDERATION ASWELL AS THE  Constitution for the united States of AMERICA,**  per PROSPECTIVE EXPERT WITNESSES :  of The Honorable GRAND SHEIK **HAKIM-BEY,**  : Mu-Atlantis: c/o Hakim-Bey  980 Baychester  St. , Bronx, N.Y. 10469 0705, Toll Free: ( 866) 841-9139 x 3836,  and  The Honorable **TAJ  TARIK-BEY Moorish American Consular General and the Honorable Sharon Tracey Gale Bey Mohammedian Vizar [Judge]** Care of 444 East Township Line Road, Box 712, Near [Havertown Pennsylvania [19083], (610)-803-1170, Northeastern Amexem Territory. **Vizar Isaiah Kaleio Quamaine Boone El** Care of Post Office Box 1406, Near [Glen Burnie Maryland [21060-1406]], Cell # (202)-594-9226 Northeastern Amexem Territory Baltimore Maryland

4

Republic.      Said Original Constitution currently situated in the **GROTO ROOM OF THE GEORGE WASHINGTON MASONIC NATIONAL MEMORIAL  IN ALEXANDRA, VIRGINIA.**

In the words of The Honorable  **TIMOTHY DINGLE-EL,** Supreme Grand Resurrection Sheik, (post mortem)  of 4911 Bell Avenue, Baltimore, Maryland 21216. McNair-Bey, has a right to **"BE HERSELF AND NOT SOME BODY ELSE".**    If the State of New York via His Honor Judge Mathew  Sciarrino, does not recognize Ms. McNair-Bey'S FEDERAL **CONSTITUTIONAL RIGHTS?** Then there are **FEDERAL JUDICIAL JUDGES who does recognize her same said; 1ST; 4TH; 5TH; 6TH, and other FEDERAL CONSTITUTIONAL RIGHTS,** pursuant to Title 28 United States Code, Section 453 **annotated.**

Please refer to, and utilize: **KUNZ  V.  NEW YORK, 340 U.S. 290 (1951) No. 50**

**Syllabus:**   "1. <u>A city ordinance  which prescribes no appropriate standard for administrative action and gives an administrative official discretionary POWER to  CONTROL  (in advance ) the r i g h t   o f   c i t i z e n s  to speak on religious  matters on the city streets **IS INVALID under the First and Fourteenth Amendments. Pp . 340 U.S. 290-295"  Unquote.**</u>

Neither His Honor Sciarrino , Jr.; The Case Agent-Assistant State Attorney; The Petit Jurors, nor the Court Appointed Counsel, Mr. Robert Reuland  Esquire  acted to  **INTERVENE**  on behalf of Civilian-Citizen McNair-Bey , in order to **PREVENT** further violation of her Constitutional Rights, as otherwise condemned by New York law at O'NEIL .V. KRYSHZMISKIE, 8 F2D 11 (N.Y. 1988 ) **"law enforcement officer HAS AFFIRMATVE DUTY to ENTERVENE on behalf of citizen who's  Constitutional rights are being violated by OTHER law enforcement officer".**

Consequently, this dereliction of duty by the other, and several Court Officers?, resulted in discriminatory  mistreatment by McNair-Bey and her son resulted in **PREJUDICE AGAINST HER SON'S  legal interest.** In the course of such dereliction of duty?  The case-agent prosecutor, and the court appointed **PRIVATE-ATTORNEY,** Mr. Robert Reuland, Esq.? Notwithstanding the entire Petit Jury? **Became coconspirators WITH HIS HONOR JUDGE SCIARRINO, Jr.  via they're ACQUIESCENCE.**

**ARGUMENTS CONTINUED**

(2.)          **By their dereliction of duty? The below identified COURT OFFICIALS**

**conspired with; confederated with; colluded with, and agreed with THE PLAIN**

**ERROR demonstrated by, & in combination with, the OVERT ACTOR: His Honor**

**Mathew Sciarrino, Jr. to racially, and religiously profile Ms. McNair-Bey, and**

**her son, buttressed by the resulting adverse decision His Honor instituted**

**on 1-2-19.**

5

### COUNTERMANDING FINDING OF FACTS CONTINUED:

(a.)    See LEGAL FACT: **UNITED STATES V.OLANO  507 U.S. 725,732-33 (1993)**
**"PLAINE RROR":**
"Counsel's statement that the court could" consider anything it wants at sentencing "did not
waive claim that <u>**court could**</u> **"misapplied Sentencing Guidelines in pre–BOOKER case."**
Now see U.S. FRADY, 456 U.S. 152, 163 n. 14 (1982) "Plain error rule authorizes appellate
courts to correct only "particularly egregious errors" and thus should be used sparingly only
to prevent miscarriage of justice"; Accord: U.S.V. WHAB, 355 F3d. 155, 158 (2nd Cir. 2004)"
plain error rule applied where error **"so egregious and obvious as to make the trial judge
and prosecutor derelict in permitting it, despite the defendant's failure to object"**.  Accord
also: U.S.V. FELICIANO, 223 F3d 102,105 (2000) **"plain error must be so OBVIOUS that trial
judge and prosecutor derelict in allowing it".**

(b.) His Honor committed the error, and done so on the transcribed  public record, in the
**FINDING OF FACTS**  on page( 1) of his DECISION/ORDER OF 1-2-19.  Duly noted under Title
28 United States Code, Section 1733, and the concomitant New York State Code for public
records. Quote: ("Ms. McNair-Bey") At the hearing she wore a dashiki and a turban".

(c.) Also, on page (1), the Court **WROTE** in the first line that**": On April 25, 2016, the defendant
was convicted after [JURY TRIAL] of Attempted Murder in the Second Degree". "The
defendant was SENTENCED to a total of twenty-five years PLUS five years.**

(d.) "On October 12th 2018, this court denied the defendant's motion with the exception of
granting a hearing as to **JUROR MISCONDUCT".**

(e.) On November 5th 2018, this court **APPOINTED ROBERT REULAND Esq.**  as attorney for the
defendant to assist in his 440 hearing  and arguments".

(f.) On 1-2-19 His Honor denied the motion on Juror Misconduct.

(g.) In early February 2019, Attorney Reuland stated to appellant over the telephone
conclusively: "you don't have anything coming on appeal", without explaining why.

(h.) "At the conclusion of the hearing, the People and defence made oral arguments".

**D.**                                **CONTENTIONS**

The statements uttered by His Honor Mathew Sciarrino on 1-2-19, by his very own writings,
in the contexts of his DECISION/ORDER, **did not constitute** a legitimate **judicial observation.**
What it manifested as, by virtue of its own weight and gravity? Was, In its irreducible minimum,
and it's quintessential  essence, **EMPHATICALLY AN  ADMISSION WITH EXTREME PREJUDICE,**
consistent with Federal Rule of Civil Procedure **36 (a),**   that demonstrated  **PRIMA FACIE RACIAL
and  RELIGIOUS PROFILING** against the indigenous, and civilian rights of Ms. Luecretia Dawn
McNair-Bey, where she **was not a criminal defendant on trial IN HIS COURT ROOM.**  Was a
witness,  **in due form of law,** who, consistent with Amendment 1 of the Constitution of the
United States, EXERCISED  her **FREEDOM OF SPEECH clause,** and  her **FREEDOM OF
RELIGEOUS choice** religious choice.  As well as, her right to **"Peaceably Assemble, and to**

petition the Government, for Redress of Grievance", with her son. Who happened to be a criminal defendant in His Honor's courtroom?  When His Honor **ADMITTED** a **SECOND** *(PRIMA FACIE  MATERIAL FACT, IN THE CONSTRUCT OF A  LEGAL  RULING).* As evidenced on page 2 of said **DECISION/ORDER** Quoted here now: "**Her [phone records] indicate** that on April 19 and April 21 **her phone CALLED  929-264-6560". Unquote.** Now witness Ibd. same page? Quote: "**He stated that his interaction with Ms. McNair-Bey did not impact his vote on THE VERDICT".** "He did state that **HIS PHONE NUMBER WAS  929-264-6560".**  Such admission,? For the **PUBLIC RECORD,** consistent with Amendment 6 of the U. S. Constitution?  Is demonstrated by a HIGH FIVE at Federal Rules of Evidence **Rule  902.** Quote:" **EVIDENCE THAT IS SELF-AUTHENTICATING". "The following items of evidence are self authenticating; they require, NO EXTRINSIC EVIDENCE OF AUTHENTICITY, in order to BE ADMITTED".**

Mr. Gyamfi **lied,** and judge Sciarrino **TESTIFIED TO THAT EFFECT! On the bases of these PLAIN ERRORS, prima facie admitted? Execute the Writ? By freeing MR. CUSH WRIGHT-El by full exoneration, for unconstitutional reasons, in the interest of justice; respect for judicial integrity, and public opinion.**

E.                          Arguments continued.......................................

    **3.  The Honorable Mathew Sciarrino, Judge, (PRIMA FACIE CONFLICT OF INTEREST) CONSPIRED WITH the State Case Agent  Assistant  District Attorney;  Defense Counsel  Robert Reuland;  The clerk of said court, and  Juror Mac Gyamfi, by such witnesses ACQUIESCING WITH  HIS HONOR,  who acted out of title, when ACTING FOR  The People i.e. : for the prosecution when he was introduced to the case as  A JUDICIAL OFFICER, in violation of Amendment 6 to the U.S. Constitution; Article III Section I Said U.S. Constitution and Title 28 U.S.C.  Section 528.**

a.)    The relevant, material, and predicated facts that constitute the **prima facie admissions** under penning these arguments are previously broached at page (3) below of this document.  Such facts are the in the custody of the Federal or State Repositories as product of "**THE MANDATODY TRANSCRIP RULES**" applicable to "**CRIMINAL TRANSCRIPTS**" under Title 28 U.S.C. Section 753 (b). As otherwise developed both by the Court Reporter and the 1-2-19 **DECISION/ORDER**       witnessed       by   THE CLERK assigned to that hearing; Mr. Mac Gyamfi, who **testified and LIED, contradicted by JUDGE SCIARRINO,** as well as the case-agent-prosecutor. Who also  **witnessed**  the **Racial Discrimination; The Religious Discrimination; the perjurous  testimony of HIS OWN WITNESS-GYAMFI;**  which was **identified and (COMPARTMENTALIZED) by**  Judge Sciarrino:  page (2) **DECISION/ORDER** "**He stated that he never called her and SHE NEVER  CALLED HIM via  phone, or app.". "He did state that HIS PHONE NUMBER  WAS 929-264-6560".**

    Article III Section 1.  Is quoted for cause and relevancy, as it describes the roll of a judge": **The judicial Power of the United States shall be vested in one Supreme Court and in such**

[INFERIOR COURTS] as the Congress may from time to time ordain and ESTABLISH." "The Judges both of the Supreme [AND INFERIOR] Courts, SHALL hold their [Offices] during [good Behavior, and SHALL, at stated Times, receive for their Services, a Compensation, which SHALL NOT be diminished during their Continuance in Office".

The manifest prima facie, racial and religious discrimination exhibited by Judge Sciarrino towards appellant and appellant's mother in a public hearing?, constituted **BEHAVIOR UNBECOMMING,** and contrary to that, which was otherwise **GOOD,** as described in Art. III Section I of our Constitution. His statements about Ms. McNair-Bey, and the defendant was clearly evidence of a **CONFLICT OF INTEREST** with "good Behavior". For those reasons? Amendment 6 of our Constitution deemed His Honor as no longer "PREVIOUSLY ASCERTAINED BY LAW". Thus, became (a court of incompetent jurisdiction).

The fact that the ADA was at the hearing of 1-2-19? And stood quiet? His silence is deemed as an **AGREEMENT** with the fraudulent behavior of Judge Sciarrino, by his **ACQUIESCENCE.** The ADA had an obligation to **OBJECT and INTERVENE as** a law enforcement officer, to protect the Constitutional Rights of witness Ms. McNair-Bey and the defendant-appellant Cush Wright–El, as they were being violated by Judge Sciarrino. **See O'NEIL V. KRYSCHZMISKIE** below at page (5)? Such an agreement is otherwise known as a **co-conspirator.**

The ADA and His Honor, generally enjoy absolute immunity. But "fraud on the Court" as described by Congress of the United States at Title 28 U.S.C. Rules 60 (b) (3) and **60 (d) (3) "SET ASIDE A JUDGMENT FOR FRAUD ON THE COURT".** Rule 60 (b) (3) articulates that: "**FRAUD (WHETHER PREVIOUSLY CALLED INTRINSIC OR EXTRINSIC),     misrepresentation, or MISCONDUCT by an     opposing party".     The State's witness GYAMFI lied.** He done so on the record, and his perjury was duly and **judicially noticed by Judge Sciarrino.** See Federal Rules of Evidence 201 (c) and (f). Accord the New York State concomitant Rules of Evidence and Civil Procedure? The Prosecutorial misconduct here, was manifested two-fold.: The State' witness lied, and the State representative, stood silent, when it had a duty to recuse its witness. But did not. Instead, the State observed the judge (**COMPARTMENTALIZE**) the perjury of the State's witness, and went along with the judge who, not only racially profiled and religiously profiled the defendant/appellant's mother, and thus the appellant himself. The Court also made a Ruling/Decision in favor of the State, and against the appellant, even while realizing, at the expense of the Judiciary's integrity, that the prosecutor's witness was lying, as the State Attorney done nothing to cure the situation. It was the Duty of the State Attorney to establish justice, not to vindictively, and selectively treat appellant and his mother as MOORISH/**AFRICAN/ISLAMIC UNDESIRABLES.** Again see O'NEIL below at (5)?

Most significantly, was the roll of Mr. Reuland, the appellant's court appointed **private attorney.** Not only did he stand silent in the court room, as all of this was occurring? He told appellant he didn't have anything coming on appeal page (6). **Reuland's position is most significant.** Why? Because he is the heavy-link that anchors the conspiracy to Judge Sciarrino and the prosecutor, who otherwise have ABSOLUTE **IMMUNITY.** Yet the U. S. Supreme Court

has articulated under **FERRI V. ACKERMAN 444 U.S.    (      )  at  WHITE V. WALSH, 649 F2d   , at   (8th Cir. 1985)** the judge and prosecutor no longer enjoy absolute immunity when they conspire with private counsel.  Reuland, witnessed the persecution of appellant's mother McNair-Bey by the trial judge, and stood silent. Then stood silent on the perjurous testimony of Gyamfi, as well as the silence by opposing counsel, who failed to do his job,  as Judge Sciarrino done the STATE'S WORK for them, and **unjustly-punished appellant.**

The same United States Supreme Court describes, and prescribes the conflicting, defaulting position of Counsel Reuland, which was interpreted for future generations of lawyers to draw from, and avoid. Please see STRICKLAND  V. WASHINGTON, 466 U.S. 6880 at 685 (1983): "**That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command".**  "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is [CRITICAL] to the [ABILITY] of the adversarial system to produce just results". **"An accused is entitled to be ASSISTED by an attorney, whether retained or appointed, who PLAYS THE ROLE NECESSARY TO ENSURE THAT THE TRIAL IS FAIR".** "For that reason, the Court has recognized that THE RIGHT TO COUNSEL, IS THE **RIGHT TO E F F E C T I V E  ASSISTANCE of counsel". MCMANN V. RICHARDSON, 397 U.S. 759, 771, n. 14 (1970).**

Mr. Reuland, breached the trust of his client Mr. Cush Wright–El from multiple angles. He did not act, to ensure THAT THE TRIAL WAS FAIR.  He admitted prior to submitting any brief on appeal, that  HE COULD-NOT  and WOULD-NOT  ensure any fair trial  b e c a u s e: He told his client Cush Wright–El same, in advance of the appeal. A **BRAIN FINGERPRINT** of Cush Wright-EL will discover those words uttered from Counsel Reuland's mouth prior to the appellate brief's submission.   In fact, Mr. Rueland, like the Judge stood in an acute conflict of interest. As apparent by the DECISION/ORDER of 1-2-19 by Judge Sciarrino which compartmentalized the perjury of the State's witness. Defense counsel did not shine a bright light on neither the perjurous admissions of the State's witness, nor upon the trial judge's prima facie racial and religious profiling.

The STRICKLAND court at page 688 further interpreted: "More specific guidelines are not appropriate. The Sixth Amendment refers simply to "COUNSEL", not specifying particular requirements of effective assistance. It relies instead on THE LEGAL PROFESSION'S MAINTENANCE OF STANDARDS  s u f f I c I e n t  to justify the Law's presumption  that **counsel  WILL FULFILL THE ROLE in the adversary process that the Amendment  envisions.** See Michel v. Louisiana, 350 U.S. 91, 100-101 (1955)". *"The proper measure of attorney performance  remains simply   reasonableness under PREVAILING PROFESSIONAL NORMS".* Mr. Rueland has not, and cannot comport with any commanding circumstances consistent with the Strickland Court.

Conspiracy is obvious; fraud on the court is obvious; conflict of interest is obvious by all three authorities: The Court; The Prosecution, and Defense Counsel.  Perjury is obvious. The Clerk witnessed it all, and has not contacted the Judicial Committee about these disgraceful acts.

The appeals court is demanded to DISMISS ALL CHARGES AGAINST CUSH WRIGHT-El with EXTREME PREJUDICE, and to issue declaratory and injunctive relief on behalf of appellant's mother, Ms. Luecretia D. McNair-Bey for cause, that the court below with its conflict of interest co-conspirators, crossing lines, prohibited by the "Tri Cameral System", while intentionally dispensing with the "CHECKS AND BALLANCES" prophylactics of equal protection and substantive due process of law. Such provisions of declaration and injunction codified under New York State Law, consistent with Federal Law at 28 U.S.C. Sections 2201-2202. But not limited to the STATE OF NEW YORK and FEDERAL, "ALL WRITS ACT", legislated otherwise, at Title 28 U.S.C. Section 1651.   Make her whole otherwise, for plenary purposes, and in the interest of justice.  Quote "The All Writs Act is a United States federal statute, codified at 28 U.S.C.  Sect. 1651, which authorizes the United States federal courts to "Issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Unquote.

Declare that Ms. McNair-Bey is not  an racial/ethnic/religious undesirable for being a witness in a duly constituted Court of Law in New York State, of these United States Of America.

Respectfully submitted this 25th day of March 2019, while pending a promised conference with Appeals Attorney Ms. Kristian Richardson, promised before appellant became aware that this Court had previously denied his appeal.

---

CERTIFICATE OF SERVICE:

A true and correct copy of this AMENDED APPEAL has been served upon the following persons:

Clerk of Court, Supreme Court of New York, Appeals division

Second Judicial Department

350 Jay street Brooklyn, New York 11201;

Kendra Hutchinson, Appellate Advocates c/o Lynn W. Fahey

 2 Recton Street 10th Floor New York, New York 10006;

 Case Agent, BROOKLYN District Attorney's Office

350 Jay St. # 10 Brooklyn, New York 11201;

Office of the Clerk, c/o Attorney Robert Rueland-Court Appointed

# APPELLATE ADVOCATES

### 111 JOHN STREET - 9TH FLOOR, NEW YORK, NEW YORK 10038
### PHONE: (212) 693-0085   FAX: (212) 693-0878

*ATTORNEY-IN-CHARGE*
PAUL SKIP LAISURE

*ASSISTANT ATTORNEY-IN-CHARGE*
DAVID P. GREENBERG

*SUPERVISING ATTORNEYS*
ERICA HORWITZ
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON
LEILA HULL
A. ALEXANDER DONN
PATRICIA PAZNER
MARK W. VORKINK

*DIRECTOR OF INNOCENCE INVESTIGATIONS*
DE NICE POWELL

*SENIOR STAFF ATTORNEYS*
ALEXIS A. ASCHER
STEVEN R. BERNHARD
DENISE A. CORSI
JOSHUA M. LEVINE

*SENIOR COUNSEL*
LYNN W.L. FAHEY
MELISSA S. HORLICK

*STAFF ATTORNEYS*
MICHAEL ARTHUS
SAMUEL BARR
CHARITY L. BRADY
SAMUEL E. BROWN
ISKUHI CHAKARIAN
CYNTHIA COLT
ALICE R. B. CULLINA
REBECCA J. GANNON
DAVID L. GOODWIN
CAITLIN HALPERN
MEREDITH S. HOLT
LAURA B. INDELLICATI
LAUREN E. JONES
ANNA KOU
BRYAN KREYKES
MELISSA LEE
TAMMY E. LINN
BENJAMIN S. LITMAN
SEAN H. MURRAY
ANDERS NELSON
ELIZABETH PLIMPTON
JONATHAN SCHOEPP-WONG
YVONNE SHIVERS
ANGAD SINGH
NAO TERAI
KATHLEEN E. WHOOLEY
JENIN YOUNES
RONALD ZAPATA
HANNAH ZHAO
DINA ZLOCZOWER

April 12, 2019

Mr. James Joseph Owens-El
1 West Conway Street, Apt. 704
Baltimore, Maryland, 21201

Dear Mr. Owens-El:

As discussed, enclosed please find a copy of DOCCS Directive 4422, concerning inmate mail. I direct your attention to page 10, which sets forth a procedure by which Mr. Wright-El can request, in advance, to receive more than 5 pages of legal matter.

I hope this letter finds you well.

Very truly yours,

Kendra L. Hutchinson

| NEW YORK STATE | **Corrections and Community Supervision** | TITLE **Inmate Correspondence Program** | | NO. 4422 |
| --- | --- | --- | --- | --- |
| | **DIRECTIVE** | | | DATE 06/27/2017 |
| SUPERSEDES DIR #4422 Dtd. 8/24/2012 | | DISTRIBUTION A B | PAGES PAGE 1 OF 13 | DATE LAST REVISED |
| REFERENCES (Include but are not limited to) Directives #2788, 2798, 4015, 4421, 4572, 4761, 4910, 4911, 4913; 7 NYCRR, Part 720; ACA Standard 4-4279,4487,4488,4489,4491,4493,4494 | | APPROVING AUTHORITY | | |

I.   **PURPOSE:**  This directive contains and describes the policies and procedures governing the correspondence program available to all inmates.  The exchange of correspondence between an inmate and another person or business must be in accord with the regulations contained in this directive.  (For the policies and procedures governing privileged correspondence, see Directive #4421, "Privileged Correspondence.")

II.  **POLICY**

A.   These regulations are specified for staff, inmates, and the general public to provide efficient mail service to all concerned.

B.   Correspondents are personally responsible for the contents of their mail.  Violation of the regulations governing inmate correspondence or the standards of inmate behavior through correspondence will be considered a serious offense and may result in disciplinary proceedings and/or the monitoring of outgoing correspondence for a specified period of time.  Inmates and all correspondents are advised that sending obscene, threatening, or fraudulent materials through the mail may be a crime under State and Federal laws.  The Department will urge prosecution whenever such mail is brought to its attention.

C.   The sending and receiving of mail by inmates will be restricted only to the extent necessary to prevent a threat to the safety, security, and good order of the facility or the safety or wellbeing of any person, and to prevent unsolicited and unwanted mail.

D.   The Superintendent shall have the overall responsibility for the administration of the correspondence program at his or her facility.  Specific responsibilities may be delegated by the Superintendent.

III. **GENERAL CORRESPONDENCE PROCEDURES**

A.   General Correspondence is mail between an inmate and someone other than a person approved for privileged correspondence (see Directive #4421, "Privileged Correspondence").  For the purpose of this directive, outgoing mail purporting to be privileged correspondence will not be considered to be privileged correspondence until it has been placed in the control of the administration for processing

B.   Outgoing Mail

1.   An inmate may submit correspondence to be sent to any person or business, subject to the conditions and limitations herein.

2.  Whenever the recipient of an inmate's correspondence indicates, in any manner, that he or she does not wish to receive further correspondence from the inmate, the Correspondence Unit, Package Room, the Deputy Superintendent for Security (DSS), the Supervising Offender Rehabilitation Coordinator (SORC), and the inmate shall be notified.  Form #3402, "Addition of Name to Negative Correspondence/Telephone List," shall be used for notification.  A copy will be filed.

3.  Negative Correspondence/Telephone List: The Negative Correspondence/Telephone List shall contain the name of any person or business that has indicated, in any manner, that further correspondence from the inmate is not desired.  If a request to be removed from an inmate's Negative Correspondence/Telephone List is received, a letter in the format of Attachment A shall be sent to the person making the request.  If such a person or business indicates, at a later time, that further correspondence is not objectionable, the Superintendent or designee may, but need not, direct the name of the person or business be removed from the Negative Correspondence/Telephone List.

Upon receipt of a request to be placed on an inmate's Negative Correspondence/Telephone List, the requester is to be informed of the toll-free telephone number for the Office of Victim Services (1-800-783-6059).  The requester should also be told that the Office of Victim Services is available to explain release notification options and access to Crime Victim Compensation funds, and, when appropriate, to make referrals to support groups or community services such as those assisting victims of domestic violence or sexual assault.

NOTE:  A parent, custodian, or legal guardian of an inmate's child who requests that the facility prohibit correspondence between the inmate and the inmate's child should be informed that their request cannot be granted absent a Court Order.  However, if an inmate violates Department correspondence procedures, correspondence may be limited as with any other person.

4.  No inmate shall continue to submit mail to be sent to a person or business that currently appears on his or her Negative Correspondence/Telephone List.  Any inmate who continues to submit mail to be sent to a person or business that currently appears on the Negative Correspondence/Telephone List may be subject to disciplinary action and/or monitoring of outgoing mail for a specified period of time.

5.  No inmate may correspond or make telephone calls to any person who is listed on an active Court Order of Protection which prohibits such contacts.  The name of the person(s) will be added to the Negative Correspondence/Telephone List.  Form #3402 will be completed and used for notification.  A copy will be filed.

6.  Correspondence by an inmate to the following persons requires the special advance approval indicated:

    a.  Unrelated minor persons under 18 years of age:  Written approval of the minor's parent or legal guardian must be obtained prior to correspondence with an unrelated minor.  The inmate may address a letter to the parent or legal guardian to obtain such approval.

b. Persons under probation or parole supervision:  Authorization from the Superintendent and the Probation or Parole Officer must be obtained before the inmate may correspond with a probationer or parolee.  Such correspondence will usually be limited to immediate family members.

c. Inmates in New York State, Federal, or other correctional facilities:  Authorization from the Superintendents concerned must be obtained before an inmate may correspond with another inmate (see Section III-C for the complete policy and procedure relating to inmate-to-inmate correspondence.)

d. Persons presently or formerly employed by the Department or in a Department facility:  Unless an inmate is an immediate family member, authorization from the Superintendent must be obtained before an inmate may correspond with any person who is a present or former employee of the Department or presently or formerly employed in a Department facility, or with any member of such person's household, at their personal or private residence address.

e. Victims:  Authorization from the Superintendent must be obtained before an inmate may correspond with any victim of a crime for which the inmate has been convicted or is presently under indictment, or with any member of said victim's household who is not an immediate family member of the inmate.  The name of the person(s) will be added to the Negative Correspondence/Telephone List.  Form #3402 will be completed and used for notification.  A copy will be filed.

7. Except for oversize envelopes and parcels, inmate-to-inmate correspondence and correspondence specified in §721.3 (a) (2) of Directive #4421, "Privileged Correspondence," outgoing correspondence may be sealed by the inmate.

8. Oversize correspondence, defined as mail which cannot be enclosed in a standard business envelope, shall be inspected in the presence of the inmate by a designated security staff person for the presence of contraband.  The Superintendent may designate block, Law Library, Package Room, Correspondence Unit, Legal Mail, Notary Public, or other staff to conduct these inspections.  Inspections shall be completed as soon as possible, but not later than 24 hours after request.  Legitimate correspondence may be sealed by the inmate after inspection, and the inspecting staff person shall then sign the back of the envelope or parcel certifying inspection and promptly deliver or forward the mail to the Correspondence Unit or Business Office as appropriate.

9. Outgoing correspondence, except as specified in §721.3 (a) (2) of Directive #4421, "Privileged Correspondence," shall not be opened, inspected, or read without express written authorization from the facility Superintendent.

a. The Superintendent shall not authorize the opening or inspection of such outgoing mail unless there is a reason to believe that the provisions of this or any directive or inmate rule or regulation have been violated, that any applicable State or Federal law has been violated, or that such mail threatens the safety, security, or good order of a facility or the safety or wellbeing of any person.  Such written authorization by the Superintendent shall set forth specific facts forming the basis for the action.

   b.   If after inspecting the contents of outgoing mail it is determined that the provisions of a directive, rule or regulation, or State or Federal law have been violated, or that such correspondence threatens the safety, security, or good order of the facility or the safety or wellbeing of any person, then the correspondence may be confiscated.  The inmate must be informed in writing unless doing so would interfere with an ongoing investigation.

      Where the inmate has been so notified, he or she may appeal the action to the Superintendent.

10.  All outgoing inmate mail will be stamped with the name and address of the correctional facility from which it is being sent and a postage meter star symbol.

11.  Outgoing mail should include the full address of the person to whom it is addressed.  It should include the name, address, city, state, and zip code.  Inmates shall not submit correspondence to be sent to a Post Office box without a specifically identified addressee; the addressee (either a person or a business) shall be clearly identified.  An insufficiently addressed envelope shall be opened to ensure that the letter is returned to the originator.

12.  An inmate may use envelopes and writing paper provided by the facility or personal writing paper.  Any printing on personalized writing paper is limited to the inmate's commitment name (unless the inmate's name has been legally changed), Department Identification Number (DIN), and facility address.  Personalized writing paper (not envelopes) may be ordered by the inmate from a commercial source.

13.  It is the responsibility of each inmate to print or type his or her return address on the front upper-left-hand corner and on the back flap of each outgoing envelope <u>exactly</u> as illustrated below.  The inmate shall use his or her commitment name unless it has been legally changed.  Failure to include all return address information in the order indicated may result in the opening and return of the mail to the inmate.  If the Correspondence Unit is unable to identify the inmate sender, the mail will be destroyed by the facility.

| Great Meadow Correctional Facility<br><br>Box 51<br><br>Comstock, New York 12821-0051<br><br>John Doremi, 00-A-0000<br><br><br><br>(Envelope - front - upper left) | New York State<br>Department of Corrections and<br>Community Supervision<br><br>Inmate Correspondence Program<br>John Doremi, 00-A-0000<br><br><br>(Envelope - back flap -<br>centered) |
|---|---|

14. A facility may restrict what appears on the outside of an outgoing envelope.

15. Inmates who are unable to read or write may request the assistance of a staff member, volunteer, or another inmate for correspondence purposes.

16. Inmates shall not conduct a mail order or other business while under the custody of the Department.  Superintendents may direct Administrative Services, Program Services, or Security Services Deputies to monitor correspondence patterns and financial accounts to detect any irregularities which would indicate this type of activity.  Violation of this policy by an inmate may result in disciplinary action and/or the monitoring of outgoing correspondence for a specified period of time.

17. Inmates shall not be permitted to use their correspondence privileges to solicit or otherwise commercially advertise for money, services, or goods.

18. Correspondence privileges shall not be used by an inmate to engage in any form of gambling or to participate in any lottery, sweepstakes, or chain letter operation.

19. An inmate may send, at their own expense, a certified or registered letter, and the inmate will be provided with a return receipt if requested and after the delivery has been made.

20. An inmate must request and pay for certified or registered mail service in order to have a valued personal document mailed out from personal property secured by the facility Inmate Records Coordinator (IRC).  Whenever such mail is prepared and sent by the IRC, a copy of the disbursement form and postal documentation showing the item has been sent will be filed in that inmate's personal property folder.  If a return receipt has been requested as part of the postal service, it shall go directly to the inmate.

21. An inmate shall not include any written material in outgoing mail not specifically intended for the addressee identified on the exterior of the envelope.  Likewise, an inmate shall not include in outgoing mail any written material for an inmate not specifically identified as the sender on the exterior of the envelope.  This practice, sometimes known as "kiting," may be the basis for disciplinary action.

22. Outgoing correspondence that does not comply with this directive will be opened and returned to the inmate.  The Correspondence Unit shall indicate the reason for return.

C.  <u>Inmate-to-Inmate Correspondence</u>

1. Approval for Inmate-to-Inmate Correspondence:  The Superintendent or chief administrator at each facility may designate a staff member to process inmate-to-inmate correspondence requests.  These requests will be investigated by both facilities to determine that the exchange of such correspondence will not create problems relating to the safety, security, or good order of the facilities, or the safety or wellbeing of any individual before any inmate-to-inmate correspondence is authorized.  Authorization for such correspondence must come from the involved Superintendents or their designees.

    a.    Exception:  Only the approval of the Superintendent of the facility where our inmate is housed is required when they request to correspond with inmates who are under the custody of the New York City Department of Corrections. This exception is based on the New York City Department of Corrections' policy that permits inmates to write to whomever they choose, including other inmates.

    b.    Restrictions:  Inmates are only permitted to correspond with immediate family members and codefendants in active cases.  For the purposes of this directive, immediate family members are defined as spouses, children, parents, siblings, and grandparents.  Other inmate-to-inmate correspondence may only be approved in exceptional circumstances.  Changes to the inmate-to-inmate correspondence lists are permitted only on a quarterly basis at the time of the inmate's scheduled interview.  Photographs of incarcerated inmates should not be included in inmate-to-inmate correspondence.

    c.    Transfer of Inmates:  When an inmate is transferred, his or her approval to correspond with other inmates will remain in effect.  The Guidance staff at the receiving facility will notify their Correspondence Unit of the names of those inmates with approvals for inmate-to-inmate correspondence.

2.    Denials of authorization for inmate-to-inmate correspondence shall include a statement of reasons for the denial, and shall be placed in both inmates' files. Such denials may be appealed to the Commissioner or designee, in writing, within 30 days.

    Authorization to correspond may be withdrawn by the Superintendent in particular cases when it is demonstrated and documented that:

    a.    One or both inmates have violated facility or Departmental rules or regulations,

    b.    The reason for the original approval no longer applies or has been determined to have been erroneous or deceptive,

    c.    The safety, security, or good order of a facility is jeopardized, or

    d.    The safety or wellbeing of any individual is jeopardized.  Such documentation shall be placed in both inmates' files.

3.    Inmate-to-inmate correspondence must not be sealed.  If it is sealed, it may be opened and returned to the inmate sender.

4.    Inmate-to-inmate correspondence may be read by the Superintendent or designee of either the sending or receiving facility or both.  No inmate-to-inmate correspondence shall be deemed in any way to be privileged correspondence.

5.    There shall be no exchange of funds or packages between inmates, except as authorized in Directive #4761, "Inmate Charitable Contributions and Gifts."

D. <u>Postage</u>

1. Purchase/Possession of Stamps

   a. Inmates may not receive stamps through the mail or through inmate packages.*

      *Note: A postage-prepaid envelope received within privileged correspondence from a court or an attorney that has been pre-addressed by the court or attorney may be received (subject to inspection by the security staff) and used by the inmate for the intended return correspondence.

   b. The maximum value of stamps in any inmate's personal possession should not exceed $22.50 (see Departmental rule #113.16).

   c. Postage shall be made available by the sale of stamps in the Commissary. Inmates may purchase up to 50 domestic first class stamps for one ounce letters per commissary buy.

   d. An inmate may purchase postage by attaching an IAS 2706 disbursement form to a letter <u>only</u> in the following circumstances:

      (1) The inmate is newly arrived at a facility, has no stamps, and has not yet had an opportunity for a commissary buy; or

      (2) The inmate has had commissary buy privileges suspended and is not eligible for or does not get a special commissary stamp buy; or

      (3) A particular letter or parcel, because of size, weight, special handling, or any other special postal feature requires an unusual amount of postage; or

      (4) There are extenuating circumstances which, in the discretion of the Superintendent, warrant processing a disbursement form; and

      (5) Sufficient funds are available in the inmate's account.

   e. An inmate who has lost commissary privileges shall be able to make a monthly stamp buy of up to 50 domestic first class stamps for one ounce letters.  This special buy shall be offered within 72 hours of the imposition of the penalty and every 30 days thereafter.  Inmates who have been admitted to a Special Housing Unit (SHU) shall be offered a stamp buy within 72 hours of admission and every 30 days thereafter.

2. Free Postage

   a. Inmates may receive some free postage for privileged correspondence (see Directive #4421, "Privileged Correspondence").

   b. Inmates received at reception/classification facilities (except cadre) shall be allotted free postage in an amount equivalent to five domestic first class letters of one ounce per week for personal correspondence for a period not to exceed four weeks.  Inmates may not accumulate, from week to week, credit for unused postage.

3.   <u>Advances for Legal Mail Postage</u>:  Funds may be advanced to an inmate for the purpose of sending legal mail in accordance with the procedures detailed in Directive #4421, "Privileged Correspondence," and Directive #2788, "Collection & Repayment of Inmate Advances & Obligations."

4.   <u>Advances for Personal Postage</u>:  Funds may be advanced to an inmate for postage for one domestic first class one ounce letter per month in the following circumstances:

   a.   The inmate has been confined to SHU for discipline or administrative segregation for 30 days or more, and has a zero or negative account balance; or

   b.   The inmate has been in keeplock status for 30 days or more, has lost telephone privileges, and has a zero or negative account balance; or

   c.   The inmate has lost telephone privileges, has a zero or negative account balance, and has not refused to accept available program assignments.

5.   <u>Inmate Organizations</u>:  Inmate organizations must pay the postage costs for all of their outgoing mail.

E.   <u>Business Mail</u>:  All correspondence addressed to a business entity, other than a member of the media, shall be considered business mail and shall be processed as follows:

1.   Business mail obligating an inmate's funds (e.g., requests to an outside vendor for goods or services, etc.) must be accompanied by a signed and approved IAS 2706 Disbursement Form (see Directive #2798, "Inmate Accounts").

2.   When processing this business mail, the facility must ensure that the inmate has sufficient funds.  If sufficient funds are available, a check or money order will be drawn against the inmate's account and inserted in the envelope as advance payment.

3.   Inmates are prohibited from using business correspondence to order any items on credit or installment plans, and are also prohibited from obligating their funds for anything more than the immediate purchase which is being reviewed.  For example, inmates may not join a club or purchase plan in which items are automatically sent to the facility along with invoices for payment each week, month, etc.  Inmates may however make one single, initial payment for items which will be delivered over an extended period of time, provided that there is no additional billing for the items being delivered in the future.

4.   All business mail, except business mail addressed to the media, will be submitted by the inmate unsealed.  Such business mail is subject to inspection.

5.   All business mail addressed to the media may be submitted by the inmate sealed.  Such business mail shall not be subject to opening, inspection, or confiscation, except in accordance with the provisions of Section III-B-7 above.

6.   Notwithstanding the above, mail addressed to a box number in care of a media entity shall not be considered to be mail addressed to the media.

F.   Collection of Mail:  Outgoing inmate mail shall be collected from mail boxes, placed in convenient locations in the facility by a correctional employee at least once a day, except Saturdays, Sundays, and State and postal holidays; mail service on Saturdays and State holidays is optional.  At no time shall an inmate collect the mail.  Collected mail shall be processed and forwarded to a Post Office at least once a day, except as noted above.

G.   Incoming Mail

1.   Inspection of Incoming Correspondence

a.   Before opening, incoming mail should be checked to make sure that the addressee can be accurately identified and is currently at the facility.  If the addressee is no longer at the facility, the mail shall be forwarded in accordance with Directive #4015, "Forwarding Inmate Mail."  All incoming general correspondence must have a clearly identifiable name of sender and return address.  A letter which does not have a return address will not be delivered to the inmate.  It will be considered contraband and handled accordingly (see Directive #4910, "Control of & Search for Contraband").

b.   All incoming general correspondence will be opened and inspected for cash, checks, money orders, printed or photocopied materials, or contraband.  The inmate's presence is not required during the inspection of incoming general correspondence.  (See Directive #4421, "Privileged Correspondence," for the procedure to be followed for the opening of privileged correspondence.  See Directive #4572, "Media Review," for publications deemed to be unacceptable.)

NOTE:  Greeting card size is not to exceed the limitations as listed in Directive #4911, "Packages & Articles Sent or Brought to Facilities," (18"x14" when opened).  Electronic cards are not permitted.

c.   Publications received at the facility which are in a language other than English shall be referred for translation services to the Central Office Director of Education prior to referral to the Facility Media Review Committee (FMRC).

2.   When, in the course of inspection, cash, checks, or money orders from a clearly identifiable source are found, they shall be removed and credited to the inmate's account as appropriate.  A copy of a check or money order made out to an inmate may be given to that inmate if the word "CANCELED," "COPY," or "VOID" is stamped or written across its face.  If this has not been done, the copy will be returned to the sender.  All anonymously received monies will be considered contraband and handled accordingly.  (See also Directive #4910.)

3.   When, in the course of inspection, printed or photocopied materials are found, the entire contents of such correspondence may be delayed through the correspondence unit for up to six days while the materials are subject to media review guidelines (see Directive #4572, "Media Review").

NOTE:  A limit of five pages of printed or photocopied materials (an individual newspaper clipping will be considered one page) may be received within a piece of regular correspondence (except as provided below).  In order to facilitate media review, pages or clippings must not be taped, glued, or pasted together or to other papers.

Not to exceed once every four months, an inmate may make a written request to the Superintendent to receive in excess of five pages of printed or photocopied legal papers specifically related to the inmate's current legal matter (e.g., legal brief or trial transcript relating to the inmate's active case) within a piece of regular correspondence.  The inmate shall make the request in advance, specifically identifying the legal papers, including the approximate number of pages, and state why they cannot be obtained via the facility Law Library or privileged correspondence (e.g., from a court, attorney, or the New York State Law Library).  If approved, the piece of correspondence must be received within 30 days thereafter.  Upon timely receipt, it shall be processed in accordance with this section and shall not be deemed privileged correspondence.

The five page limit on the printed or photocopied materials shall not apply to incoming mail from any of the entities listed in §721.2 (b) (2) through (6) of Directive #4421, "Privileged Correspondence," or to incoming mail from a process server or other entity that is seeking to serve a legal notice upon the inmate.

4.  When, in the course of inspection, contraband is found, it shall be removed and given special handling according to type:

a.  Third-party mail:  Defined as correspondence from a party who is not identified as the sender in the return address.  The facility shall return the entire correspondence to the sender with a letter explaining that third-party mail is considered contraband, is against Department rules, and therefore will not be delivered to the inmate.

b.  Unauthorized items:  Shall be either returned to the sender at the expense of the inmate, or otherwise disposed of.  Such will be the choice of the inmate and accomplished at the inmate's expense.  An inmate should be allowed 30 days to obtain funds to pay the cost of disposing of the contraband.  If, after 30 days, the inmate is unable to pay for disposal of the contraband, it will be donated or destroyed.

c.  Personal identifying information:  Any material which appears to contain personal identifying information (e.g., social security number, home address, private e-mail address, or home telephone number) belonging to any person who is not a member of the inmate's immediate family shall be examined.

If the information identifies a present or former employee of the Department or a person presently or formerly employed in a Department facility, or a member of such person's household, it shall be withheld for investigation unless it is determined that the inmate has authorization from the Superintendent to receive such correspondence, or the personal identifying information pertains to a member of the inmate's immediate family.

    d.   Crime and sentence information on other inmates:  Any material which contains crime and sentence information on any other inmate shall be confiscated and delivered to the Superintendent.

    e.   Illegal items (drugs, weapons, etc.):  Shall be forwarded to the security office, with appropriate chain-of-custody documentation.  When appropriate, the New York State Police or appropriate police agency shall be notified.

    f.   Anonymously received money:  Cash, checks, or money orders will be confiscated, labeled, and forwarded to the Fiscal Office for safekeeping.  An investigation will be conducted in an attempt to verify the source.  If after proper investigation no source is identified, the monies will be turned over to the State Treasurer as miscellaneous receipts on an OSC Form AC 909-S.

    g.   Uniform Commercial Code (UCC) Financing Statement:  Any UCC Article 9 form, including but not limited to, any financing statement (UCC1, UCC1Ad, UCC1AP, UCC3, UCC3Ad, UCC3AP, UCC1CAd), correction statement (UCC5), or information request (UCC11), whether printed, copied, typed, or hand written, or any document concerning a scheme involving an inmate's "strawman."  "House Joint Resolution 192 of 1933," the "Redemptive Process," "Acceptance for Value," or document indicating copyright of an inmate's name is prohibited absent prior written authorization from the Superintendent.  All such material and any other material contained within the correspondence shall be examined by the Superintendent in consultation with the Office of Counsel and may be withheld for investigation.  An inmate may request authorization from the Superintendent to receive specific materials by providing the Superintendent with specific, legitimate legal reasons why such materials are required.

5.   Incoming general correspondence, other than inmate-to-inmate letters and inmate business mail, will not be read unless there is evidence that the correspondence may contain one or more of the following:

    a.   Plans for sending contraband in or out of the facility;

    b.   Plans for criminal activity including escape; and

    c.   Information which, if communicated, would create a clear and present danger to the safety of persons and/or the security and good order of the facility.

6.   Written authorization from the facility Superintendent to read incoming mail must be placed in the inmate's file specifying the reasons such action is considered necessary and whether all mail or certain correspondence shall be read.  Such authorization shall be for a 60 day period subject to renewal by the Superintendent.  The Superintendent shall request documentation from the person recommending inspection to determine that there are sufficient grounds for reading the mail, that the reasons for reading the mail are related to the legitimate interests of safety, security, and order, and that the reading is no more extensive than necessary to further these interests.

7. When incoming general correspondence is withheld by the designated staff member for any of the above listed reasons, notification shall be sent to the sender and the intended correspondent of the action taken and reasons therefore, unless doing so would interfere with an ongoing investigation. The sender and inmate may appeal this action by writing the Superintendent.

8. Correspondence privileges with a particular person may be withheld, by the disposition of a Superintendent's Hearing, where the inmate has been involved in improper conduct in connection with correspondence with such person.

9. At the Superintendent's discretion, a record of incoming and outgoing mail may be kept by the Correspondence Unit.

10. Mail received at a facility from which an inmate has been transferred or released shall be handled in accordance with the procedures indicated in Directive #4015.

11. Inmates are authorized to retain all of their personal correspondence, subject only to the limitations expressed in Directive #4913 and any other applicable rule or regulation.

12. Incoming mail that is deemed to constitute a form of gambling, lottery, sweepstakes, or chain letter operation is prohibited from coming into the facility. Such mail shall be stamped "RETURN TO SENDER" upon entering the facility.

13. When an inmate's incoming correspondence is stamped "RETURN TO SENDER," or something similar, the Correspondence Unit should take precautions to ensure that the letter is not an attempt to circumvent the Department's inmate-to-inmate correspondence procedures. When such mail is opened to check for contraband it shall be inspected to determine if it was written by the inmate to whom it is being "returned." If it was not written by that inmate, it shall be withheld.

H. <u>Distribution of Mail</u>:  Incoming general correspondence will be delivered to inmates on normal business days by a correctional employee. Inmates are not permitted to deliver mail to other inmates.

If the incoming general correspondence is registered or certified, the inmate to whom it is addressed shall sign a receipt for such correspondence. If the inmate refuses to sign a receipt, the correspondence shall be returned to the Postal Service marked "Refused."

**Sample letter**

**Facility Letter Head (See Directive #0008, "Use of Department Stationery & Business Cards")**

Dear

This is to confirm that you contacted _____, a staff member at this facility, on _____ indicating that you no longer wish to receive correspondence and/or telephone calls from inmate_____, DIN _____ and you wish to have your name added to the inmate's Negative Correspondence/Telephone List.

Staff at this facility will make every effort to ensure that your request is honored.

For your information, the toll-free telephone number for the Office of Victim Services is 1-800-783-6059.  Staff at that office are available to explain release notification options and access to Crime Victim Compensation funds and, when appropriate, to make referrals to support groups or community services such as those assisting victims of domestic violence or sexual assault.

If the information contained above is incorrect, or if you would like any additional information, please contact the Office of Victim Services.

Sincerely,

Superintendent

# APPELLATE ADVOCATES

111 JOHN STREET - 9TH FLOOR, NEW YORK, NEW YORK 10038
PHONE: (212) 693-0085    FAX: (212) 693-0878

*ATTORNEY-IN-CHARGE*
PAUL SKIP LAISURE

*ASSISTANT ATTORNEY-IN-CHARGE*
DAVID P. GREENBERG

*SUPERVISING ATTORNEYS*
ERICA HORWITZ
LISA NAPOLI
WILLIAM G. KASTIN
KENDRA L. HUTCHINSON
LEILA HULL
A. ALEXANDER DONN
PATRICIA PAZNER
MARK W. VORKINK
ALEXIS A. ASCHER

*DIRECTOR OF INNOCENCE INVESTIGATIONS*
DE NICE POWELL

*SENIOR STAFF ATTORNEYS*
DENISE A. CORSI
JOSHUA M. LEVINE

*SENIOR COUNSEL*
LYNN W. L. FAHEY
MELISSA S. HORLICK

*STAFF ATTORNEYS*
MICHAEL ARTHUS
SAMUEL BARR
ANJALI BIALA
CHARITY L. BRADY
CYNTHIA COLT
ALICE R. B. CULLINA
GRACE DiLAURA
SAMUEL R. FELDMAN
DAVID L. GOODWIN
MEREDITH S. HOLT
ANNA KOU
MELISSA LEE
TAMMY E. LINN
BENJAMIN S. LITMAN
SEAN H. MURRAY
ANDERS NELSON
SEAN NUTTALL
AVA C. PAGE
MARTIN B. SAWYER
JONATHAN SCHOEPP-WONG
YVONNE SHIVERS
ANGAD SINGH
STEPHANIE SONSINO
NAO TERAI
SARAH VENDZULES
BENJAMIN WELIKSON
KATHLEEN E. WHOOLEY
JENIN YOUNES
RONALD ZAPATA
HANNAH ZHAO
DINA ZLOCZOWER

April 26, 2019

Mr. James Joseph Owens-El
1 West Conway Street, Apt. 704
Baltimore, Maryland, 21201

Dear Mr. Owens-El:

As Mr. Wright-El requested, enclosed please find a copy of pages 3 and 4 of the judge's decision in his CPL 440 proceeding, along with a full copy of the decision.

Very truly yours,

Kendra L. Hutchinson

OFFICE OF THE DISTRICT ATTORNEY, KINGS COUNTY
APPEALS BUREAU
NOTICE OF ENTRY DATED _1-2-19_
Pro Se

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: PART 2
------------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

    -against-

CUSH WRIGHT-EL

    Defendant.

------------------------------------------------------------------X

**DECISION/ORDER**

Hon. Matthew A. Sciarrino, Jr.
Ind No.: 8166-2014

KINGS COUNTY D.A. OFFICE
APPEALS BUREAU
2018 DEC 21   PM 2:4
RECEIVED

    On April 25, 2016, the defendant was convicted after jury trial of Attempted Murder in the Second Degree (PL § 110/125.25[1], two counts of Assault in the First Degree (PL § 120.10[1]), one count of Criminal Possession of a Weapon in the Second Degree (PL § 265.03[3]) and one count of Reckless Endangerment in the First Degree (PL § 120.25). The defendant was sentenced to a total of twenty-five years plus five years of post-release supervision. The defendant subsequently filed a notice of appeal, which has not been perfected. On July 7, 2018 he filed a motion, *pro se,* to vacate his conviction based on, *inter alia,* allegations of juror misconduct. On October 12, 2018, this court denied the defendant's motion with the exception of granting a hearing as to juror misconduct. On November 5, 2018, this court appointed Robert Reuland, Esq. as attorney for the defendant to assist in his 440 hearing and arguments, pursuant to section 18-b of the County Law. On December 10 and 11, 2018, this court conducted a hearing to explore the extent to which any juror misconduct occurred. At the conclusion of the hearing, the People and defense made oral arguments. The People supplemented their argument with a written memorandum of law. Defense counsel relied on the record.

## FINDINGS OF FACT

    The defense presented the testimony of the defendant's mother: Luecretia D. McNair-Bey ("Ms. McNair-Bey"). At the hearing she wore a dashiki and a turban. She testified that the defendant was her son. Ms. McNair-Bey attended almost every day of the trial and was present when the defendant was convicted and sentenced. On April 19, 2016, after the trial recessed for the day, one of the jurors, Mac Gyamfi ("Mr. Gyamfi"), boarded the elevator with her. She stated

that she introduced herself to Mr. Gyamfi as the defendant's mother. He introduced himself as Mr. MacWilliams. She asked if he was on the jury. They continued their conversation as they headed towards the subway. During the course of the conversation, Ms. McNair-Bey revealed that she was from Maryland and looking for a place to stay. She stated that Mr. Gyamfi offered for her to stay with him, which she declined. Before they parted ways, Mr. Gyamfi provided her with his phone number. She stated that later on April 19th she called him, and that Mr. Gyamfi tried to make arrangements for them to get something to eat together, however the two never met. She stated that she tried to speak to him via the IMO app, however Mr. Gyamfi "responded in a short matter" and "[i]t was like he didn't want to talk." With regard to the case, Ms. McNair-Bey stated that the extent of Mr. Gyamfi's commentary was that "the facts would speak for themself [sic]." She stated that she made no attempts to influence Mr. Gyamfi's decision on the verdict. However she stated that she felt that it was implied by Mr. Gyamfi that he would help her son if she stayed overnight at his place. Her phone records indicate that on April 19 and April 21 her phone called 929-264-6560. Those calls were one minute and two minutes, respectively.

The People presented the testimony of Mr. Gyamfi. He testified that he was a juror in the defendant's trial. He admitted to meeting a woman dressed in traditional African clothing after the first day of trial. He stated that they had a conversation wherein he offered assistance finding a cheaper place for the woman to stay and that they exchanged numbers. He denied that Ms. McNair-Bey told him that she was the defendant's mother. He stated that the next day he saw that her in court and asked one of the court officers who she was. It was then that he was told that she was the defendant's mother. He admitted that he did not say anything to the judge or court staff because he had not talked about the case with her. He stated that he kept it to himself, stayed away from her and had no further conversations with her. He stated that he never called her and she never called him via phone, or app. He stated that his interaction with Ms. McNair-Bey did not impact his vote on the verdict. He did state that his phone number was 929-264-6560.

## CONCLUSIONS OF LAW

CPL 440.10[3][a] sets forth that "[a]lthough facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal

from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal." At the outset, the court does not find the testimony of Ms. McNair-Bey to have been entirely credible. The testimony adduced at the hearing demonstrated that the interactions between Ms. McNair-Bey and Mr. Gyamfi occurred during the course of the trial. The court finds that it strains credibility that if the interactions occurred as Ms. McNair-Bey says they occurred, she failed to tell the defendant prior to his sentence. Therefore, as the court finds it incredible that the defendant was not aware of the interaction between his mother and the juror, his motion would be procedurally barred by CPL 440.10[3][a] as he failed to make the alleged misconduct appear on the record.

However, even if the court were to determine this issue on the merits, the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion. Under CPL 440.10[1][f], a court may vacate a conviction if "improper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom."

If the interaction between her and Mr. Gyamfi had so concerned her and had "taken her breath away" as she put it, she would have reported it to a court officer or other court official. At the very least, she would have told her son prior to his sentencing. However even assuming her version of the events were true, the court finds that Mr. Gyamfi's actions did not constitute substantial misconduct or render him grossly unqualified (see People v. Buford, 69 NY2d 290 [1987]). Nor did it render him unable to render an impartial verdict (see People v Spencer, 29 NY3d 302 [2017]). There was no testimony that Mr. Gyamfi stated his verdict hinged upon Ms. McNair-Bey staying with him. By her own admission, this is something that she felt was implied. Also by her own admission, Mr. Gyamfi stated that with regard to the verdict, the facts spoke for themselves. Therefore, although the contact between the defendant's mother and Ms. Gyamfi was indeed improper, the court finds that it did not rise to the level of affecting a substantial right of the defendant (See CPL 330.30[2]).

3

Accordingly, it is hereby:

ORDERED, that the defendant's motion to vacate his conviction is denied.

This opinion shall constitute the decision and order of the Court.

Dated: December 20, 2018

Matthew A. Sciarrino, Jr.
Acting Justice, Supreme Court

4

*Exb 5 E.D.N.Y.*
*In re Cush Wright-EL*

Joint Affidavit & Declaration by James Joseph Owens-El & Luecretia McNair-Bey, seeking
**INTERVENTION BY THE ATTORNEY GENERAL OF THE STATE OF NEW YORK, to "Secure the blessings of
Liberty", for cause. In the cause of Cush Ajelya Wright-EL In re. : THE PEOPLER OF NEW YORK–against-
CUSH WRIGHT-EL Defendant Ind. No.: 8166-2014. Hon. Mathew A. Sciarrino, Jr. Pursuant to
Amendment-1, for the Constitution of the United States. Next see *PREAMBLE –CONSTITUTION STATE
OF NEW YORK "We the people of the State of New York, GRATEFUL to ALMIGHTY GOD for Our
FREEDOM ; In order to Secure it's Blessings; DO ESTABLISH THIS CONSTITUTION";,***

Art. 1  BILL OF RIGHT(3)"Freedom of Worship; Religious Liberty"(4)"; (6)"Duty of Public Officer  to
sign waiver of immunity and give testimony ; PENALTY FOR REFUSING";

Art. Executive .Sections 1-8 et. seq.

Art. V. Officers and Civil Departments (1)" Comptroller and Attorney General payment of State
Employees with out audit, VOID."

Art. VI Judiciary

Art. VII State Finances (1)"Judiciary";(13)"Refund of State debt;

Art. VIII Local Finances;

Art IX Local Governments (3) "Existing laws to remain applicable; definitions ";

Art. X. (5)" Public Corporations";

Art. XIII Public Officers (1) "Oath of Office"; (5) "removal from office for MISCONDUCT;

Art. XVI Taxation (5) Public Officers and employees subject to taxation"

A.  **Affidavit:** All facts of a material nature are advanced pursuant to the penalties for perjury codes
of "Great State of New York" New York Penal Code Section 210.15 **Perjury in the first degree.
GOOGLE , 6:31 p.m. June 16th 2019** " A person is guilty of perjury in the first degree when he
swears falsely and when his false statement (a) consists of testimony ,and (b) is material to the
action, proceeding or matter in which it is made **. Cross indexed by** Title 18 United States Code
Sections 1621, 1622, and 1623. But not limited to Title 28 United States Code Section 1746. See
also: Title 28 Federal rules of Appellate Procedure **Rule 46 (a)(1)(2) "** The applicant must
subscribe to the following oath or affirmation: **"I, Kendra Hutchinson Appellate Advoctes, State
of New York,** do solemnly swear [or affirm] that I will conduct myself **as an attorney and
counselor of this court, UPRIGHTLY AND ACCORDING TO LAW;** and that I will *SUPPORT AND
DEFEND THE CONSTITUTION OF THE UNITED STATES".* See **U.S. CHAMBER INSTITUTE FOR
LEGAL REFORM OCTOBER 2007**. "STATE ATTORNEY GENERAL CODE OF CONDUCT"
"Recommended Best Practices for Initiating and Conducting Investigations and Litigation".
From GOOGLE June 16th 2019. Accord **Maryland judicial article Sections 9-101 perjury
generally; 9-102 SUBORNATION OF PERJURY] , and 9-103 EMPHASIS ADDED PERJURY BEFORE
COURTS AND JURIES"** . With interstate Commerce Fraud and Codes.Title 18 U.S. C. Section
**1341; 1343.** Title 28 U.S.C. 528 "THE ATTORNEY GENERAL OF THE UNITED STATES SHALL BE
REQUIRED". Next, see:" New York State Joint Commission on Public Ethics" REPORT
MISCONDUCT-TIP LINE  1-800-87-ETHICS; " JSCOPE: Regulating Lobbying and Ethics in New

(1)

York State" MICHAEL K. ROZEN CHAIR 540 BROADWAY  ALBANY, NEW YORK 12207; phone
(518) 408-3976 FAX (518) 408-3975; "WE ARE ACCOUNTABLE TO HELP CHANGE THE CULTURE
OF ETHICS IN NEW YORK STATE Report Misconduct";

B.        **FACTS IN SUPPORT OF DECLARATION; AFFIDAVIT; AND REMAND FOR INTERVENTION:**

1.   Luecretia Dawn McNair-Bey, is the birth mother of Appellant Cush Ajelya Write-El . Cush
     Wright-EL is the Defendant In re: **THE PEOPLE OF NEW YORK –against- CUSH WRIGHT-EL
     Ind. No. : 8166-2014.**

2.   Luecretia D. McNair-Bey for all times relevant to the appeal in these proceedings **was a
     percipient witness for the defense,** pursuant to Federal Rules if Evidence **801(d) (1) ©.** For
     purposes of a hearing before The Honorable **Mathew A. Sciarrino, Judge,** involving a
     hearing on the subject matter of **JUROR MISCONDUCT. In re: JUROR MAC GYAMFI.** Hearing
     Date 1-2-19.

3.   At the 1-2-19 Hearing, ibid. "The Defendant subsequently filed a NOTICE OF APPEAL, which
     has not been perfected. On July 7, 2018he filed a motion, *pro se,* to vacate his conviction
     based on, **inter alia,** allegations of juror misconduct. On October 12, 2018, this court denied
     the defendant's motion with the exception of granting a hearing **AS TO JUROR
     MISCONDUCT.**

4.   On November 5, 2018, this court appointed **Robert Reuland, Esq.** to represent appellant or
     assist in his 440 hearing.

5.   **ENTER JAMES JOSEPH OWENS-EL.**  Wright –El recruited his mother, Luecretia D. McNair-Bey
     and his **STEP-FATHER James Joseph Owens-EL** to assist with the status of his contacts and
     otherwise, disjointed connections with attorneys who, in Wright-El's opinion? were:
     **ESTRANGELY MISSING.** Also, to assist in the construction and mailing of the **SUPPLEMENT
     OPENING APPLICATION ON APPEAL.**

6.    ON March 25th. 2019 Owens-El and Luecretia D. McNair-Bey completed the **SUPPLEMENT**
     and made multiple copies, and broached the **ORIGINAL TO THE CLERK OF COURT** Appeals
     Division  Supreme court of New York  Second Judicial Department  350 Jay Street Brooklyn,
     N. Y. 11201; **Kendra Hutchinson ,** Appellate Advocates c/o  **Lynn W. FAHEY** 2 Recton Street
     10th Floor New York, New York 10006; Case Agent **BROOKLYN  District State's Attorneys'
     Office** 350 Jay St. Brooklyn, New York 11201 ; **OFFICE OF THE CLERK c/o ATTORNEY ROBERT
     RUELAND- COURT APPOINTED,** Supreme Court of New York Judicial Division 350 Jay Street
     Brooklyn , New York 11201.

7.   At the end of page-10 , in **bold black print:** Owens-El broached: "<u>while pending  A
     PROMISED CONFERENCE WITH APPEALS ATTORNEY  MS. KRISTIAN RICHARDSON/
     HUTCHINSON, promised BEFORE  appellant became aware that this court  previously
     denied his appeal. "</u>

8.   Enclosed with the **10-pages SUPPLEMENT,** by Luecretia D. McNair-Bey was a $50 money
     order  to convenience Wright-EL the ability and obligation to envelope and distribute the
     multiple copies. Where the warden, and the attorneys, had not.

9.   Specifically: **Counsel Kendra Hutchinson verbally agreed <u>in February 2019 with
     authorization from CUSH WRIGHT-EL, over the telephone IN INTERSTATE COMMERCE;</u>**

**witnessed by  mother Luecretia Dawn McNair-Bey; and Luis Vizcarrondo FARGUS-EL, THAT OWENS-EL CAN SPEAK WITH HUTCHINSON REGARDING THE CONSRUCTION AND SUBMISSION OF THE SUPPLEMENT.**

10. After two-weeks with no reception of the envelope enclosing the original and 4-copies of the **SUPPLEMENT** , wright EL reported that his investigation before the Lieutenants and the Warden at the **5-POINTS CORRECTIONAL INSTITUTION** produced **ZERO RESULTS** for the existence of the SUPPLEMENT; THE ROIGINAL AND 5-COPIES, nor the Fifty Dollar Money Order.

11. Kendra Hutchinson, **in a first conversation with OWENS-EL; MCNAIR-BEY, AND FARGUS-EL ,Hutchinson AGREED to contact the Warden to locate and retrieve the SUPPLEMENT.** Owens-EL had the dates of the conference and promise by Hutchinson, but no longer have that date and other dates.

12. **In April 2019,** Appeals Attorney Hutchinson was contacted by McNair-Bey and Owens-EL to report to her that Wright-EL said he has not been able to realize the existence or arrival of the **SPPLEMENT. _RACIALLY, AND RELIGIOUSLY PROFILED MCNAIR-BEY_** simply because she wore **"A DASHIKI", and "A TURBAN"** in his court room, when testifying as a witness , for her son on the (NOW ADMITTED POINT) and burden of the Court (THAT GYAMFI) " **_ALTHOUGH THE CONTACT BETWEEN THE DEFENDANT 'S MOTHER AND MS. GYAMFI (SIC) (Mr. Gyamfi) was I N D E E D    I M P R O P E R"_** .

13. Hutchinson stated:  **"she spoke to the warden;' " the Warden promised to release the mail containing the SUPPLEMENTAL BRIEFS to her", that she would , upon receiving them? distribute them to all parties'" and that Cush Wright-EL would not have to pay anything to her office for that service."**

14. On numerous occasions Luecretia McNair-Bey and James Joseph Owens-EL have attempted to call Ms. Hutchinson leaving her telephonic massages in the form of **embellished assessments of the qualified legal positions against judge Honorable Mathew A. SCIARRINO , Jr., A F T E R    Richardson/Hutchinson (SIC) said she(HAD) retrieved the last two pages of the ORDER of 1-2-19.** Where Wright-EL asked her to forward the remaining 2-pages of the 4-pages **ORDER** of Judge Sciarrino. Such **ORDER- ADMITTING that Mr. Gyamfi  MADE THE ERROR OF JUROR MISCONDUCT, but that in the Court's opinion, HIS ERRORS DID NOT MEET THE REQUIRED LEVEL OF CULPABILITY TO GIVE CAUSE TO ESTABLISH PREJUDICE TO WRIGHT-EL, and  unlawfully      WITHOUT JURISDICTION TO DO SO?     SHIFTED THE BURDEN FROM OFF OF GYAMFI, UPON MCNAIR-BEY. McNair-Bey, NOT BEING THE DEFENDANT, NOR THE PROSECUTION.  Moreover, that HIS HONOR SCIARRINO**

15. In late May and over 6-times in June 2019, Owens-EL and McNair-Bey called to the Office of the Appellate Advocates, seeking Ms. Hutchinson's status report and progress on securing the **SUPPLEMENT in the Courts custody?** Each time, the phone system would either **TRANSFER US TO AN ADDITIONAL POINT, OR SOMEONE ELSE, WHO WOULD transfer us to MS. HUTCHINSON'S ANSWER MACHINE.  Where and when, on each occasion we reasserted our challenge to the MISBEHARIOR OF JUDGE SCIARRINO.  Reflecting chiefly on Article 3 Section 1 to the Constitution of the United States featuring (GOOD BEHAVIOR) STANDARDS.**

16. Ms. Hutchinson has N E V E R   ONCE COMMUNICATED why she **HAS NOT KEPT HER PROMISED TO TURN OVER TO THE COURT THE <u>SUPPLEMENTAL BRIEFS OR THE $50 MONEY ORDER which she otherwise admitted to Owens-EL , and McNair-Bey that she secured from THJE WARDEN OF FIVE-POINTS CORRECTIONAL FACILITY.</u>**

17. Owens-El noted on Hutchinson's answering machine on at least two occasions that she **HAS DEMONSTRATED AN ACUTE CONFLICT OF INTEREST, BY NOT FOLLOWING THROUGH WITH HER PROMISE TO FORWARD THE BRIEFS; THAT SUCH INACTIONS QUALIFY TO AN APPRECIATIVE (BREACH OF CONTRACT); DERELICTION OF DUTY AGAINST HER CLIENTS RIGHTS AND LIBERTY; THAT SAME QUALIFYS AS INTENTIONAL AND GROSS NEGLIGENCE. Still more, that since she admitted that she talked to the Warden that he AGREED, to turn over to her the BRIEFS AND MONEY ORDER? And she later AGREED to Owens-EL and McNair-Bey that she is forwarding the BRIEFS TO THE COURT, but has not yet done so? That her and the Warden has significantly (CONSPIRED) to   p r e v e n t Cush Wright-El from being able to enjoy ACCESS TO COURTS even after MUTCHISON AGREED IN LATE FEBRUARY, that Owens-EL's position against Judge Sciarrino constituted RACIAL AND RELIGIOUS BIAS AGAINST MCNAIR-=BEY, resulting in a COURT OF INCOMPETENT JURISDICIONS', PLAIN ERROR DECISION, IN THE FORM OF A deprivation of liberty. In violation of Amendments 1 and 5 to the Constitution of the United States.**

CONCLUSION

This affidavit is the truth and nothing but the truth. The Attorney General is called on to **ENFORCE THE LAWS THAT THE WARDEN AND HUTCHINSON, both swore to up hold as TWO STATE OF NEW YORK PUBLIC OFFICERS. Then encourage the Courts of New York to DISCHARGE THE PERSON OF CUSH WRIGHT-EL. Where the Court upon prima facie admission, in its loss of judicial integrity IS NO LONGER A COURT *"PREVIOUSLY ASCERTAINED BY LAW"*** As otherwise commanded by Amendment 6 to our U.S. Constitution. Requiring **retroactive invalidation of probable cause consistent with Amendment 4 U.S. Constitution.** IN VIEW OF THE Courts **Racial and Religious Bias and Judicial Misconduct and Bad Behavior delineated at Article 3 to The U.S. Constitution, commensurate with the Constitution of "The Great State of New York".**

**God save THE CONSTITUTION OF THE UNITED STATES OF AMERICA?**

**Respectfully submitted by TWO-JOINTLY SIGNING MOORS:**

*James Joseph Owens-El*

*McNair-Bey: Luecretia Dawn*

(4)

Luecretia Dawn McNair-Bey

This 17th day of June 2019

(5)